# Ex Parte T. C. Armstrong.

## No. 11901.   Delivered June 20, 1928.

The opinion states the case.

*Lea McGrady, Thomason & Edwards* and *J. G. McGrady* of El Paso, for relator.

*C. L. Vowell,* District Attorney, El Paso, and *A. A. Dawson* of Canton, State's Attorney, for the State.

MARTIN, JUDGE.—This is an original application to this Court for a writ of habeas corpus by relator, T. C. Armstrong. The facts shown in the record are very briefly as follows:

Relator, who was on all the dates of the transactions herein mentioned the Chief of Police of El Paso, Texas, arrested in February, 1928, one William Cardone and wife and Eugene Brignola. The arrest followed receipt of a telegram from Los Angeles requesting the arrest of the parties and the further request to search and hold all money taken from them. When arrested, they took from William Cardone $2680.00, from his wife $3865.00, and from Brignola $3070.00. On the following day a complaint was filed with the Justice of the Peace charging said parties with being fugitives from justice and with having committed grand larceny in the State of California. All of the money taken from the prisoners was alleged stolen property. Shortly thereafter the alleged injured party arrived in El Paso and was unable to identify Mrs. Cardone, who was thereupon released. He also stated he was unable to identify any of the money taken from the parties as his own. This money was placed in packages marked for identification and deposited in package form in one of the banks in El Paso. Thereafter, on March 12, Cardone and Brignola had a habeas corpus hearing before the district court of El Paso County, seeking therein to obtain release from an arrest under an executive warrant issued by the Governor of Texas, which directed their delivery to certain agents of the State of California. A hearing was had on said application on March 12 and the following docket entry was on that date made: "Remanded to custody of Chief of Police to be delivered to officers named in Governor's warrant together with moneys taken from applicant on arrest." About March 24, judgment was entered in the minutes of

the District Court as of March 12, carrying into effect such docket entry, but in addition also ordering delivery to said officers of the money taken from Mrs. Cardone, wife of William Cardone. At the time this entry was made a civil suit was pending against the bank and district attorney for all the money taken from the parties, the suit having been instituted by Mrs. Cardone, who claimed as her own all of said money. On March 14 the parties withdrew notice of appeal theretofore given to the Court of Criminal Appeals from the above judgment and likewise the said civil suit was dismissed and on that date the money in question was delivered to relator, Armstrong. It appears that he afterwards delivered to Mrs. Cardone the money taken from her and to each of the other parties the money taken from him respectively and Cardone and Brignola were thereupon taken to California by two policemen of El Paso and upon arrival the money checked about $6000.00 short of its original total amount. This shortage is accounted for in most part by deducting from the original total money paid to attorneys as fees, to the policemen as expenses and to Mrs. Cardone the portion taken from her and subsequently returned. Contempt proceedings were thereupon instituted against relator Armstrong and upon a hearing he was adjudged guilty of contempt for failure and refusal to obey the decree of the Court ordering him to deliver the money in question to the California officers, and punishment assessed against him was a fine of $100.00 and two days in the county jail. This application is made for relief from said last mentioned order.

The question presented for determination is whether or not the Court had the authority to enter a judgment requiring relator to pay the money in question to the officers of California under the circumstances above set out. In other words, can the District Courts of Texas legally make an order relating to the disposition of alleged stolen property where the only criminal charge pending against accused involving such property is without the jurisdiction of our State, and where such order is entered in an ex parte proceeding in which is presented for determination the question only of the unlawful detention of accused arrested as a fugitive from justice. Apparently the case against Mrs. Cardone had been dismissed and she had been set free. The prosecuting witness against her was unable to identify her as one of the guilty parties or any of the money as his property. That a trial court could not take her property in a habeas corpus proceeding to which she was not a party and transfer possession of same to a stranger to be taken from the State is, we think, too obvi-

ous to require any analysis or discussion. We will attempt to discuss his right to order the payment of the money taken from Cardone and Brignola.

Title 14, C. C. P. relating to fugitives from justice was enacted in aid and furtherance of Art. 4, Sec. 2, of the United States Constitution, which provides for the return of persons charged with crime who shall flee from justice and be found in another state. It has been expressly decided that the question of relator's guilt or innocence cannot be tried in a habeas corpus proceeding instituted by a fugitive from justice to obtain his release from custody under an executive warrant. Ex parte Wells, 298 S. W. 904. So it would seem to logically follow that the issue of whether or not the money in question was stolen property, also its legal ownership, was not within the scope of the Court's inquiry. Indeed the statute itself, Art. 113, C. C. P., defining a writ of habeas corpus seems to expressly limit the scope of the inquiry to "why he is held in custody or under restraint." No felony charges had been filed against Cardone and Brignola, as seems authorized under Art. 1559, P. C., which defines the crime of bringing stolen or embezzled property into this from another state. If there had been pending a charge of the character defined in Art. 1559, P. C., in El Paso County, on the date of the judgment in question, an entirely different question might be presented. The terms of Chapter 2, Title 12, C. C. P. relating to the disposition of stolen property by the Court or magistrate, refer undoubtedly to charges pending in Texas and not to those pending in other States. This seems plain by the language used in Art. 934 of said chapter, reading as follows:

"Upon the trial of any criminal action for theft, or for any other illegal acquisition of property which is by law a penal offense, the court trying the case shall order the property to be restored to the person appearing by the proof to be the owner of the same."

We see no authority under the articles of said chapter two for an order by the Court to deliver stolen property to a third person, as was done in the instant case, even if the provisions of said chapter were applicable here, and which as already indicated we believe do not apply to crime of which the State of Texas has no jurisdiction.

Our inquiry here is directed to the authority of the Court to enter the particular judgment which was the occasion of the contempt order for "if, upon a review of the whole record, it appears that a judgment unwarranted by law was entered, the party thus

366

placed in contempt will be released under the writ of habeas corpus."
Ex parte Duncan, 42 Tex. Crim. Rep. 672.

It was said in Goodfellow v. State, 53 Tex. Cr. Rep. 471:

"It has become the settled law in Texas that in order to impose a punishment or fine for constructive contempt, that the court must first have jurisdiction to hear and determine the particular matter, and, second, it must have power to render the particular judgment which was rendered."

Quoting further from Ex parte Duncan, supra:

"Some of the older authorities regard jurisdiction of the matter and the prisoner sufficient to give the court jurisdiction to pronounce the judgment which could not be successfully assailed by this writ The rule now, supported by high and abundant authority and excellent reason, is that the court must not only have jurisdiction over the person and the matter, *but authority to render the particular judgment.*" (Italics ours.)

The judgment is not conclusive upon the authority of the Court to render it, as that as well as any other matter which would render the proceeding void is open to inquiry.

Jurisdiction may be concisely stated to be the right to adjudicate concerning the subject matter in a given case. 7 R. C. L. 1029. Unless the power or authority of a Court to perform a contemplated act can be found in the constitution or laws enacted thereunder, it is without jurisdiction and its acts without validity. 7 R. C. L. 1030. It seems hardly necessary to state that one could not be guilty of contempt for refusing to obey an order which was void or which the Court had no authority or jurisdiction to make. 13 C. J. 14. Ex parte Castro, 115 Tex. 77. As already indicated no authority seems to be lodged in a court or magistrate in a habeas corpus proceeding of the character in question to order the delivery of money to the officers of another state. Indeed the constitutionality of a statute is more than doubtful that would attempt to confer the power upon a Court to transfer property in dispute out of the state in an ex parte proceeding of the character shown in this record. We are not aware of any provision of the Constitution or statute which grants or attempts to grant to a court the right to make the order complained of herein.

It has been said: "To authorize the issuance of an order of restitution of money found on the person of accused when arrested, it must be identified as the money stolen and if not so identified the

Court may order its return to accused after his conviction." 36 C. J., 951, Section 593.

This money could have been impounded in a civil proceeding and its title adjudicated in a proper proceeding.

Likewise it seems a criminal action is authorized against those who bring stolen or embezzled property into the State (Art. 1559 P. C.) and against those who receive such property knowing it to have been stolen. (Art. 1543 P. C.) There is ample provision made by law for the disposition of stolen property in pending cases involving some of which our Courts have jurisdiction. We mention this only to show that the law is not impotent in cases of this character.

The desire of the trial court to preserve these funds intact is to be commended, and he was undoubtedly prompted to act in this matter from lofty motives, but his action, however commendable, was, we believe, without the power conferred upon him by either the Constitution or statute.

It is vigorously argued that relator faced the embarrassing situation of liability to the arrested parties arising from an unlawful arrest and seizure and that the order of the Court, being void, could not be pleaded in bar of a damage suit against him, and therefore his only safety lay in a return of the money. As this phase of the case does not seem to affect the legal question involved herein, we see no reason for discussing same.

Believing, therefore, that the order which relator is alleged to have violated was made without authority of law and was void, the relator is ordered discharged.

*Relator discharged.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.