HALMU, Respondent, vs. HALMU, Appellant.

*May 14—June 15, 1945.*

For the appellant there was a brief by *Rubin, Zabel & Ruppa* of Milwaukee, and oral argument by *Nathan Ruppa*. *Ralph J. Podell* of Milwaukee, for the respondent.

WICKHEM, J.   This case has a long history of legal proceedings.   We see no way to avoid a quite detailed account of these in view of the points made upon this appeal.

Plaintiff divorced defendant on December 19, 1923.   The judgment of divorce provided for payments by defendant of $60 a month combined alimony and support money for plaintiff and the three minor children of the parties.   At that time the oldest child was four years old and the youngest child just under two years of age.   Between 1925 and 1927 plaintiff remarried.   Between these two dates there were numerous legal skirmishes.   As early as June 9, 1925, contempt proceedings were initiated against defendant, and there appear to have

been some proceedings relating to change of custody and reduction of alimony, presumably arising out of the fact of plaintiff's remarriage, although this is not clear from the record. On March 17, 1927, an order was entered directing the inspector of the house of correction to produce defendant in court on March 18th, from which it appears that prior contempt proceedings had culminated in a commitment. A similar order appears on May 9, 1927, and on May 10th a motion to modify the divorce judgment was heard. At that time defendant was required to produce and deposit with the clerk two certificates of four shares each of capital stock of a certain corporation, to be held until the further order of the court. On July 19, 1927, a contempt motion was heard and counsel for the parties were authorized to sell certain bonds and turn the money into court. The contempt motion was continued to September 13, 1927. On that date the adjourned proceedings were had and the notation indicates that arrearages were reduced to $500. Defendant was released from paying anything over and above that amount. He was ordered to pay $12 per week for the support of his children and an additional $5 a week on arrearages. On October 3, 1927, a contempt motion was heard and certain directions were made to defendant to pay small arrearages. On October 20, 1927, after contempt proceedings on October 18th, an order of commitment was issued. On November 1st a motion to punish defendant for contempt was heard and commitment issued. Similar proceedings were had and dismissed on November 22d, but on November 29th another contempt motion was heard and the court ordered "defendant to indorse the certificates now on deposit and to apply the proceeds upon the arrears of $122 as per order." On January 3, 1928, a motion was heard to modify the judgment. This was held open by the court. On March 22, 1928, proceedings were again initiated to punish defendant for contempt. Similar proceedings were initiated on April 20, 1928. These apparently were heard on April 23,

1928, in connection with a motion to reduce support money. The latter motion was denied and defendant ordered to pay $16 at once. On August 23d contempt proceedings were again heard and defendant ordered to turn over certain stock to the clerk of the circuit court. On November 30, 1928, proceedings in contempt were again initiated and were heard on December 4th. Defendant was ordered to pay $20 by December 5th and the motion was continued to December 18th. On January 9, 1929, a contempt motion was again heard and defendant ordered to keep up payments. On February 12th a contempt proceeding was continued to April 9th, subject to be called up whenever defendant should default in payments of $10 a week. On December 12, 1930, a motion was made to modify the judgment. On December 15th this motion was heard and the matter continued to January 12, 1931. On January 17, 1931, defendant initiated proceedings to have the custody of the children awarded to him. These matters came on to be heard on January 26, 1931, and were taken under advisement. In the meantime an order to show cause why support money should not be increased was filed, and on the 16th of March, 1931, these matters came on for hearing. The court then denied the motion for change of custody and that for increase of support money was taken under advisement. On April 11, 1931, the court entered an order increasing support money to $15 a week commencing April 15th. On May 19, 1931, contempt proceedings were again heard and defendant was ordered to make up arrears and keep up regular payments. The matter was continued to June 2d. On June 9th the contempt proceedings were again heard and all matters were continued to June 16th. On June 13th a motion to modify the order for suit money came on for hearing and the court denied the motion but directed plaintiff not to bring any contempt proceedings so long as defendant paid $10 a week. On August 17th contempt proceedings were again initiated and on September 14th and October 26th were

continued. The September 14th order was entered requiring defendant to pay $50 per month support money. On November 30, 1932, the contempt motion was finally heard and dismissed. On September 7th another contempt motion was heard and continued. On November 9, 1934, contempt proceedings were initiated and on November 13th were adjourned until the 27th at which time no disposition of the matter appears to have been made, the notation being that it was taken off the calendar. The same notation appears as to contempt motions commenced February 1, 1935, and February 6th of the same year. On December 7, 1935, another contempt motion was heard. The court found defendant guilty of contempt of court, committed him to the house of correction for sixty days; provided that he might purge himself by paying $50 on or before December 31st. Commitment was stayed until January 8, 1936. The court also ordered that defendant, beginning January 1, 1936, pay $22.50 per month. The notation is that arrears were held in abeyance. On January 8, 1936, a contempt motion was heard and the defendant having complied with the court order of December 7th, the court purged him of contempt and dismissed the motion. On November 18, 1936, a contempt motion was heard and the court again found defendant guilty of contempt, sentenced him to the house of correction for sixty days but permitted him to purge himself by paying arrears of $34.25 to March 1, 1936, on or before April 8, 1936. On April 8, 1936, another contempt motion was heard. The court dismissed the motion and vacated the order of commitment, made on March 18th. On January 15, 1940, contempt proceedings were again initiated. On January 23, 1940, this contempt motion was heard. The court discontinued as of July 1, 1939, the duty of defendant to pay support money on the ground that the youngest son, then still a minor, was self-supporting. On January 25, 1940, the clerk of the court was directed to turn over to plaintiff shares of stock heretofore referred to

as deposited with the clerk. On April 20, 1944, contempt proceedings were again initiated and were heard before Judge SHAUGHNESSY. The court restrained defendant from conveying or mortgaging any of his real estate or other assets except in the usual course of his business.

This brings the history of litigation down to the proceedings before Judge BRAUN in which plaintiff brought contempt proceedings and sought a money judgment for the total arrears. On July 5, 1944, the court entered such a judgment.

Defendant's first and most important contention is that the trial court had no jurisdiction to enter a money judgment in contempt proceedings. This is grounded upon two undeniable circumstances : (1) In 1940 defendant was absolved from making further payments to the youngest of his three children. This might be passed over upon the ground that this child was then a minor; that the order was a temporary adjustment grounded on the fact of the son's employment and did not affect the power of the court, should the son be in need between the time of the order and the time of majority to make further revision and to require further payments; (2) some time prior to December 19, 1942, however, the youngest child became twenty-one years of age and defendant contends that at least after that time the divorce court had no further jurisdiction with respect to arrearages or anything else connected with the divorce judgment. Sec. 247.32, Stats., provides :

"After a judgment providing for alimony or other allowance for the wife and children, or either of them, or for the appointment of trustees as aforesaid the court may, from time to time, on the petition of either of the parties, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and also respecting the appropriation and payment of the principal and income of the property so held in trust, and may make any judgment respecting any of the said matters which such court might have made in the original action. . . ."

It is evident that the powers of the divorce court as such to revise and alter its judgment respecting the amount of the allowance for the minor children must end at the attainment by them of majority. In *Boehler v. Boehler*, 125 Wis. 627, 630, 104 N. W. 840, this court said:

"No authority is conferred by statute to provide in a divorce judgment or any proceedings in a divorce action for the support of adult children of the parties. The plain meaning of the statute as to children is that provision for their maintenance shall be limited to the period of minority. Words to that effect are a part of the statute by necessary implication. . . . It follows that the modification of the divorce judgment complained of was worse than mere error. It was extrajudicial. It was and is a nullity."

This case, of course, deals only with the power of the court to alter or modify its decree or to order support for an adult child. So far we may consider that the contentions of defendant are sustained.

The question involved here goes beyond that, however. The question is whether after the youngest child has arrived at the age of twenty-one years, the divorce court in a contempt proceeding may enter a money judgment founded on arrearages accumulated during the time when it had jurisdiction over the children and power to enforce those portions of the judgment requiring defendant to make payments for the support of his children. In *McCartney v. Superior Court of Okmulgee County*, 187 Okla. 63, 101 Pac. (2d) 245; *Sides v. Pittman*, 167 Miss. 751, 150 So. 211; *Reynolds v. Reynolds*, 192 Okla. 564, 137 Pac. (2d) 914; *Lowry v. Lowry*, 189 Okla. 650, 651, 118 Pac. (2d) 1015, it was held that the jurisdiction of the divorce court in respect of arrearages ends with the attainment of majority by the youngest child affected by the support order, and that the divorced wife is relegated to an independent action, either of debt upon a record or judgment or in

restitution for sums paid by her to support the children because of the husband's failure to discharge the duty created by the support order.   In the *Lowry Case, supra,* the court said:

"The purpose of the order in this case was the support of the minor children.   This purpose has been accomplished, and the matter of the care and custody of the minor children is finally disposed of.   The force and life of the order expired on the date the youngest child attained majority.   It makes no difference whether the one directed to pay has fully complied with such order or not, in so far as enforcing same by contempt proceedings.   We hold, therefore, that the trial court does not have jurisdiction to enforce its order to pay child support by contempt proceedings on accrued unpaid instalments commenced after the child has reached majority."

The conclusion that the remedy after majority is a separate action to recover arrearages we hold to be sound.   The nature of the action will later be determined.   This would dispose of the case were it not for considerations hereafter to be discussed.

This divorce was granted by the circuit court for Milwaukee county, and while it is true that divorce is wholly statutory and that jurisdiction to function as a divorce court must be found in the statutory grant, it is undeniable that the circuit court for Milwaukee county is also a court of general jurisdiction with power to entertain a separate action by plaintiff. Thus, in *Dovi v. Dovi,* 245 Wis. 50, 55, 13 N. W. (2d) 585, there was a divorce action in which a divorce was denied, but the custody of the children was awarded to one of the parties. The legislature, in 1943, had repealed sec. 247.28, Stats., specifically giving a divorce court, upon denial of a divorce, power to deal with the custody of children.   There was an appeal on jurisdictional grounds, but this court held that the circuit court was a court of general equity powers ; that it had jurisdiction of infants, and that this jurisdiction being granted by the constitution, could not be taken away by the legislature. The court considered the rule in New York that after a divorce

was refused, no jurisdiction remains to award the custody of the children, and that a separate proceeding in equity must be brought in order to dispose of the question of custody. In rejecting this rule, this court said:

"We discover no sound reason for requiring the parents who are before a court of competent jurisdiction to be dismissed therefrom and compelled to resort to an ancient equity practice."

Hence, while we consider that the divorced wife, after attainment of majority by the children, must bring an independent action in a competent court to recover the arrearages, we are of the view that, (1) since the parties have appeared before a court with undoubted jurisdiction to entertain the independent action; and (2) since they have had a full trial upon the merits we ought not to relegate plaintiff to a new trial of the matter upon the issuance of an ordinary summons and complaint unless there was something in the present proceedings prejudicial to the interests of defendant. While we hold that it was error to entertain contempt proceedings, we consider that the error was neither jurisdictional nor prejudicial. True, the judgment appealed from purports to be an amendment of the original judgment of divorce. It is also true that the proceedings were denominated "contempt proceedings." However, the parties were before the court, had an opportunity to present every defense that was available, and no attempt was made in the judgment to punish or threaten defendant with contempt. All that there is before us is a money judgment after a full trial upon the merits. We see no reason to disturb this judgment because of any of the foregoing contentions.

We now address ourselves to the contention that since the support money was payable in instalments, plaintiff is subject to a defense of the statute of limitations and there is much controversy in the briefs as to what statute is applicable. We

shall not discuss the latter point in detail because we are satisfied that the doctrine of *Kusick v. Kusick,* 243 Wis. 135, 9 N. W. (2d) 607, requires the holding that no statute of limitations has run upon plaintiff's cause of action. In that case it was held that so long as the jurisdiction of the divorce court was operative in respect of custody and allowance for children, no other court in this state of co-ordinate jurisdiction could interfere to alter or to modify the judgment in either of those respects.

This being true, plaintiff, up to the time her youngest child was twenty-one years of age, could not have commenced or maintained an independent action for arrearages. The question of arrearages was just as much within the discretion of the divorce court as any other matter relating to the support of the children, and the same confusion would result if an independent action at law for amounts in arrears were permitted as would occur in the case of any other attempt to alter or modify the judgment of the divorce court. Plaintiff being completely disabled from bringing an independent action until the youngest of her children had reached the age of twenty-one years, whatever statute of limitations was applicable could not commence to run until that time which was the first date upon which an action could be commenced.

Further support for this proposition is furnished by *Ashby v. Ashby,* 174 Wis. 549, 183 N. W. 965, where this court, on page 554, stated:

"So that it appears from the foregoing that inasmuch as the judgment for alimony is a continuing judgment, always subject to modification by the court during the life of the parties, the statute of limitations cannot and does not apply."

The principle of this decision applies to cases of support of minor children, with the limitation that the statute begins to run upon attainment of majority by the children. In this connection see *Beck v. First Nat. Bank in Oshkosh,* 244 Wis.

418, 12 N. W. (2d) 665; *Yates v. Yates,* 157 Wis. 219, 147 N. W. 60. The gist of the matter set forth in *Ashby v. Ashby, supra,* is that contrary to the rule in numerous states the divorce court in Wisconsin has the power to modify alimony and support payments retrospectively. *Will of Burghardt,* 165 Wis. 312, 162 N. W. 317, which applied sec. 330.18 (1), Stats. (ten-year limitation upon a foreign judgment), to an alimony judgment obtained in Illinois, is to be distinguished, (1) because the judgment involved here is a Wisconsin judgment and if the action is upon the judgment the twenty-year limitation of sec. 330.16 applies; and (2) because we have held that as to a support order no action could have been brought until the maturity of the children and no existing statute could have run upon the cause of action.

The present action having been commenced within two years of the time of attainment of majority would not be barred by any existing statute of limitations and defendant was not prejudiced in this respect by the form which the proceedings took.

Finally, in order to sustain the somewhat irregular proceedings below it is necessary to determine the nature of the independent action by the wife against her husband which matures upon the attainment of majority of her youngest child. We hold that it is an action which at common law would be denominated one of debt upon a record. It is true that this court in *Barber v. Barber,* 2 Pin. 297, held that debt cannot be brought upon a decree for alimony unless the decree has the same force as a judgment at law. The court held a decree for alimony by the vice-chancellor of the fourth circuit of the state of New York not to have this quality for the reason that the amount of alimony and the decree itself were subject to change and modification by the court that issued the latter. To the same effect see *Kempster v. Evans,* 81 Wis. 247, 51 N. W. 327. To be distinguished is *Kunze v. Kunze,* 94 Wis. 54, 68 N. W. 391, where an action upon a foreign decree for

alimony was sustained where the decree required the payment of a specific sum and had the effect in the state where rendered of a judgment at law for the payment of money. While the portions of the divorce judgment in this case requiring the payment of support money were subject to change and modification during the minority of the children the divorce court for reasons heretofore outlined completely lost jurisdiction at majority to deal with the amounts due and these became fixed and beyond the control of the court. The judgment and its various amendments fixed defendant's duty to pay sums certain in money and the amount due is arrived at by a computation based upon the record. Under these circumstances, we consider that plaintiff need only show the amounts due by reason of the judgment during the minority of the children, subtract payments made by defendant, and the balance will be the amount owed by defendant. In this connection see *Will of Burghardt, supra,* p. 316, in which the court dealing with a similar situation said that "it must be held that the amount due being merely a matter of mathematical computation made it such a judgment and decree that it may be enforced against the estate of the deceased."

The foregoing disposes of the principal legal questions raised in this case.

As to the amount of arrearages, we have checked the findings of the trial court with the record and find them correctly computed. No useful judicial service would be served by enlarging upon this statement. There are, however, two questions that need to be considered in connection with the amount due. The first is whether plaintiff, in spite of her belligerency, was guilty of laches because in the case of every contempt order she accepted the determination of the court as to the relief awarded her. We think there is nothing to this proposition. Plaintiff tried as hard as she could and used all means available to her to collect sums due for support money. For practical reasons, after an appraisal of the situation, the

trial court gave her considerably less assistance than was necessary in order to wipe out the arrearages. Plaintiff was in no position to object to this. She followed the directions of the court and laches cannot be attributed to her.

The second question has to do with the fact that the trial court on numerous occasions declined to reduce the amount of support money but directed plaintiff not to bring further contempt proceedings so long as defendant kept up payments in a lesser amount. Here, again, the court evidently addressed itself to the practical necessities of the situation, and tried to arrive at an amount that defendant could or would pay upon the theory that it was better for plaintiff actually to receive a lesser amount than for the court to insist upon an amount so large that defendant would endure commitment rather than to pay it. There is an intimation that these tactics resulted in some way in discharging arrearages or reducing at least temporarily the amount of suit money to be paid. We think not. The orders of the court expressly declined to alter the support order. Defendant is in no position to take advantage of the court's attempt to give the greatest present aid to plaintiff, consistent with defendant's recalcitrance.

The final question relates to the allowance of attorney's fees. The trial court allowed plaintiff attorney's fees in the amount of $100 and defendant objects upon the ground that the court had lost jurisdiction of the parties. This is, of course, a repetition of arguments heretofore considered. Since we treat this as substantially a separate and independent action, and the court under secs. 271.01 (3) and 271.04 (1) (a), Stats., could have allowed costs in the identical amount, defendant has not been prejudiced.

*By the Court.*—Orders and judgment affirmed.

BARLOW, J. (*concurring*). While I agree that the judgment must be affirmed, I do not consider that the trial court's jurisdiction to punish for contempt for husband's failure to

pay support money which the court had ordered to be paid to the mother for the support of minor children, terminated upon their reaching their majority. In *Lowry v. Lowry*, 189 Okla. 650, 118 Pac. (2d) 1015, it was held that the court lost jurisdiction to enforce by contempt proceedings payment of support money after the minor became of age, on the theory that such proceedings were, (1) for the benefit of a private party, or (2) to coerce payment for a private party. This same objective existed before the minor became of age. The use of contempt proceedings to enforce the payment while the child was a minor was then likewise for the benefit of a private party who was furnishing the support. In my opinion contempt proceedings are not for the benefit of a private party. The contempt consists of failure or refusal of the party to obey an order of the court, and the contempt continues so long as the party fails or refuses to comply with the order of the court. As the court said in *In re Milburn* (1883), 59 Wis. 24, 34, 17 N. W. 965:

"The mere fact that the contempt was in proceedings supplementary to a judgment founded upon a contract, did not make it any the less a contempt, nor prevent its being punished as such."

And in *In re Meggett* (1900), 105 Wis. 291, 298, 81 N. W. 419, it was said:

"But whether a debt exists or not is quite immaterial. The imprisonment is not for the debt, but for disobedience of an order to pay money, made, not because he owed it, but because, after the court had sequestered it after it was property *in custodia legis,* he had wrongfully diverted it from the court's control. . . . This is not an imprisonment for debt. It is the exercise of the contempt power inherent in courts of equity to re-establish a *status quo* wrongfully disturbed. The punishment inflicted, even in civil contempts, where indemnity to another party is the dominant purpose, nevertheless rests

upon the power of the court to vindicate its own authority, and to punish for defiance thereof, but to adjust that punishment so as to protect or enforce private rights."

The failure or refusal of the defendant to comply with the order of the court constitutes the grounds on which he is brought before the court, and the only way he can purge this contempt is by complying with the order. Until he has complied with the order or has been released by the court from the duty to comply with it, he is flaunting the authority of the court to enforce its orders and judgments. The fact that further payments are not required when the minor becomes of age does not change the refusal on the part of the defendant to comply with a lawful order still in existence.

I am authorized to state that Mr. Justice FRITZ concurs in the foregoing.