**Ex parte Earl M. HOOKS, Relator.**

No. A–11688.

Supreme Court of Texas.

March 22, 1967.

Rehearing Denied May 24, 1967.

Everett Lord, Beaumont, for relator.

Ernest Browne, Beaumont, for respondent.

POPE, Justice.

This is an original habeas corpus proceeding. Relator, Earl M. Hooks, says that the district court was powerless after his children reached their eighteenth birthday to enforce by contempt a judgment for accrued child support that was rendered before they became eighteen. We hold that art. 4639a, Vernon's Ann.Civ.St. empowered the district court to enforce its order by contempt.

Relator and Geraldine Hooks were divorced in 1946. They had two children, Margaret, born January 29, 1944, and Dina Ray, born June 25, 1945. Hooks did not comply with the court's orders for child support and on March 31, 1961, after hearing, the court found him in contempt and ordered him to jail. He remained in jail until May, 1961. On that date the court rendered a judgment which released Hooks from jail but ordered:

"[T]hat the defendant, Earl M. Hooks, be held in continuing contempt for the sum of the present arrears in the amount of Four Thousand and Seventy Dollars ($4,070.00) and for court costs in the

amount of Six Dollars and Twenty-Five Cents ($6.25) and for attorney's fees in the amount of One Hundred ($100.00) Dollars in the total amount of Four Thousand One Hundred Seventy-Six Dollars and Twenty-Five Cents ($4,176.-25) but that the defendant, Earl M. Hooks, be released from custody upon the payment of Sixty ($60.00) Dollars each month commencing on the 9th day of May, 1961, said payments to be continued until the youngest child of the marriage * * * shall reach the age of eighteen (18) years and then the defendant, Earl M. Hooks, to be held in continuing contempt until the arrears in the amount of Four Thousand and Seventy ($4,070.00) Dollars has been paid in full; and further that an additional Five Dollars ($5.00) per month commencing on the 9th day of May, 1961, be paid in addition to the Sixty ($60.00) Dollars child support payment until such time as the attorney's fees and court costs have been paid."

On May 9, 1961 Hooks was delinquent in his support payments and the extent of his arrearage was definitely fixed by the judgment. Ex parte Savelle, 398 S.W.2d 918 (Tex.1966). On that date Margaret was seventeen and Dina Ray was sixteen so all of the $4,070.00 arrearage accumulated before either of the children had reached the age of eighteen. The 1961 judgment definitely ordered Hooks to pay that sum when the youngest child of the marriage reached age eighteen. Unless he paid it "then," he would be in contempt until it was paid in full.

Hooks, in compliance with the court's 1961 judgment, made the monthly payments until the younger child reached eighteen years of age on June 25, 1963. He then refused to comply with the judgment that he pay the delinquent sum of $4,070.00. Hook's former wife, Geraldine, instituted this contempt proceeding to enforce the 1961 judgment for arrearages in support. After notice, hearing and a trial the court on September 12, 1966, held Hooks in contempt for his non-compliance with the 1961 judgment and order. The parties stipulated that Hooks had failed to comply with the order to pay the arrearage of $4,070.00 and also that he was capable of paying the sum.

Hook's sole contention is that the district court was powerless to enforce its 1961 order after the youngest child reached the age of eighteen. Article 4639a, V.C.S., is the source of the judicial authority to make judgments concerning child support. The pertinent provisions of the statute are:

"* * * The court may by judgment order either parent to make periodical payments for the benefit of such child or children, until same have reached the age of eighteen (18) years, or, said court may enter a judgment in a fixed amount for the support of such child or children, and such court shall have full power and authority to enforce said judgments by civil contempt proceedings after ten (10) days notice to such parent of his or her failure or refusal to carry out the terms thereof, * * *."

The statute is in two parts. The first part empowers the court to order periodical payments until the child reaches eighteen. The enforcement provision immediately follows the grant of powers to order the support. The statute limits orders for support to the pre-eighteen period; the enforcement provision, however, contains no such limitation. Instead, the statute states that the court shall have "full power and authority to enforce said judgments. * * *"

Hooks says that the district court lost all powers to enforce the pre-existing valid judgment for support at the instant the child reached eighteen. He emphasizes his position by reference to the 1961 order which ordered him "then" to be held in continuing contempt until the arrearages were paid. He concludes that this is an order for child support after the children reached eighteen. In our opinion Hooks has confused the power of the court to order support during the pre-eighteen period with the court's power to enforce an order.

The entire sum embodied in the 1961 order in question was determined as a fixed and certain amount that was delinquent during the time the children were less than eighteen.

Hook's contention infers a legislative intent that an order to pay accrued support payments would be wholly undone by the delinquent parent who, as Hooks has done, successfully persuades a judge to postpone payment of delinquent support payments until the child reaches eighteen. It would mean that a contemnor who is in jail by an order entered before a child reaches eighteen, must be discharged when the child becomes eighteen despite his continued contumacious conduct. It would mean that a delinquent parent, as a practical matter, could always escape the final payment of child support. We should cautiously attribute such reasoning to the Legislature.

■■■ Article 4639a was enacted for the purpose of affording judicial power to a divorce court to decree and compel the payment of allowances for the support of dependent minor children after the entry of the divorce decree. Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931). A contempt proceeding is the only means of enforcement of a valid support order. Burger v. Burger, 156 Tex. 584, 298 S.W.2d 119 (1957). There is no power to enforce a support judgment by execution, Ex parte Birkhead, 127 Tex. 556, 95 S.W.2d 953 (1936), nor by garnishment, McDonald v. Mercantile National Bank, 162 S.W.2d 991 (Tex.Civ. App.1942, no writ). Since the only means for enforcement is by contempt proceedings, and since the Legislature expressly stated that the court has "full power and authority to enforce said judgments by civil contempt proceedings," we conclude that it intended that this full power should not be shortened by narrowly construing its intent. The legislative purpose was to provide a means to enforce judgments for the support of children beneath the age of eighteen, not to wipe them out.

The relator, Earl M. Hooks, is remanded to the custody of the sheriff of Jefferson County, Texas.

CALVERT, C. J., and SMITH, GREENHILL and STEAKLEY, JJ., dissenting.

## DISSENTING OPINION

SMITH, Justice.

I respectfully dissent. I would hold the judgment of contempt void because the so-called judgment of May 9, 1961, holding Hooks "in continuing contempt," is not a contempt judgment, but is in reality an agreed judgment. The judgment of May 9, 1961, is only a recitation of an agreement between the parties. The agreement merely recognizes an indebtedness. The former Mrs. Hooks had recourse to the courts upon breach of the agreement to enforce the same, but at no time did she have the right to substitute contempt proceedings for the legal remedy open to her. Hooks lived up to the agreement by making monthly payments until June 25, 1963, the date the youngest child of the marriage of Hooks and Geraldine became eighteen years of age. Thereafter, on January 22, 1964, Geraldine instituted a new contempt proceeding against Hooks when her only remedy was to institute a suit in a court of competent jurisdiction to enforce the agreement to pay the debt of $4,070.00. The contempt judgment of September 12, 1966, held Hooks in contempt solely because he failed to carry out the so-called judgment of May 9, 1961. The May 9th, 1961, judgment was incorporated into and made a part of the new judgment.

Hooks contends here that the contempt judgment is too vague, indefinite, and uncertain to be enforceable; therefore, it is void. When the history of this case is traced from its inception, it should be recognized that a sounder reason exists than that advanced by Hooks as to why he not be held in contempt. In effect, Hooks is being denied due process of law, in that, he is

now confronted with a proceeding for contempt at a time after an agreement was reached between the parties.

The record shows that Hooks and Geraldine were divorced in 1946. The divorce decree awarded the custody of their two children, Margaret, born in 1944, and Dina Ray, born June 25, 1945, to Geraldine and ordered Hooks to make child support payments to the mother for the benefit of the two children. On March 31, 1961, Hooks having failed to comply with the Court's order, and after a hearing, was found to be in contempt. Hooks was ordered to jail and remained there until he was released in accordance with the May 9th, 1961, agreement. At that time, the children were both under eighteen years of age. The trial court released Hooks from jail obviously for the reason that Hooks was not financially able to pay the delinquent payments. In lieu of ordering Hooks to jail until he purged himself of contempt by paying the sum then due, the court approved the agreement of the parties entered into on May 9, 1961. I cannot conceive of any District Judge being so inconsiderate of the welfare of the children as to release a father from custody knowing that he was financially in a position to pay the arrearage. To the contrary, I must presume that the judge realized on May 9, 1961, that Hooks was unable to pay $4,070.00 or any part thereof; otherwise the court would not have released Hooks from custody.

Geraldine, instead of pursuing a course of harassment which would lead to the ultimate incarceration of the father of her children, should have filed a suit in behalf of the children to collect the $4,070.00 delinquency. It is stipulated in this record that Hooks owes the sum of $4,070.00 and is now able to pay the same. While it is true that there is no evidence in the record as to Hooks' financial status in May, 1961, I contend that he was discharged and released from confinement on May 9, 1961, because he had purged himself of contempt by agreeing to pay the sum of $4,070.00 in'

the manner stated in the May 9, 1961, judgment or agreement. Therefore, Hooks has satisfactorily purged himself. The May 9, 1961, judgment merely evidences an agreement to pay $4,070.00.

I assume that Geraldine has maintained and supported the children during all of the time involved. The sums expended by her may have been more or may have been less than $4,070.00, but regardless of the amount of the claim she may have as a result of supporting the children, this Court should not at this late date allow Geraldine to use the courts in a contempt proceeding to collect the debt. Hooks has previously been confined. He has satisfied the demands of the court in the manner above indicated. The trial court, on September 12, 1966, retried Hooks for the same charge of contempt as the one for which he was tried in March, 1961. The trial court had no power or jurisdiction to proceed against Hooks and hold him in contempt merely because a judge, after a hearing, entered an order which recited that Hooks shall be "held in continuing contempt." See Loy v. Loy, 32 Tenn.App. 470, 222 S.W.2d 873 (1949).

I would discharge the Relator, Hooks.

## DISSENTING OPINION

### CALVERT, Chief Justice.

I respectfully dissent. I would hold the judgment of contempt void for two reasons: (1) The order Hooks is charged with violating will not support the judgment, and (2) the trial court had lost jurisdiction of the subject matter when the judgment of contempt was entered.

To put the issues in proper perspective, it will be well to point out what the majority have *not* held. They have *not* held that Hooks may be imprisoned under the terms of the March, 1961 judgment. They could hardly do so in view of the recitation in the May, 1961 judgment that the "matter [of prior contempt] had been *satisfied* by

agreement."[1] Moreover, when the May, 1961 judgment materially changed the terms of the 1946 order of support, Hooks could no longer be in contempt of the first order, whether his violation of it occurred before or after the modification. See Miller v. Railroad Commission, 9 Cal. 2d 190, 70 P.2d 164, 112 A.L.R. 221 (1937); Warder v. Shufeldt, 40 N.M. 442, 62 P.2d 812 (1936); Peck v. Yorks, 32 How.Pr. 408 (N.Y.1867); 17 Am.Jur. 52, Contempt § 48. Neither does the majority holding appear to give any effect to the provision of the May, 1961 judgment which purports to adjudge in advance that Hooks was in contempt—"continuing contempt"—if he should fail to carry out its terms. That is understandable. An advance adjudication of contempt would deny the right to present defenses when violation of the order occurred and would be a denial of constitutional due process.

Hooks was adjudged by the trial court to be in contempt for violation of the "child support orders of May 9, 1961," and those orders alone. Unless the order of May 9, 1961, directing him to pay $4,070 will support the judgment of contempt, he should be released. To this, I understand the majority agree. I suggest that the order directing Hooks to pay $4,070 will not support the judgment of contempt for alternative reasons: (1) It did not fix a definite time when he was commanded or required to make the payment, or (2) the court had no power to require him to make the payment at the time fixed by the order.

The validity of the judgment of March 30, 1961, committing relator to jail until he paid support arrearages of $3,700 is not questioned. Assuming the validity of that judgment, the court nevertheless had the power to release relator from incarceration whether or not he had purged himself of contempt by making the payment. This the court did. The court also had the power by virtue of the express language of Article 4639a to alter or change its original support order. This the court also did. The terms of the order entered on May 9, 1961, are less than clear. As pertinent here the order reads:

"* * * that the defendant, Earl M. Hooks, be released from custody upon the payment of Sixty ($60.00) Dollars each month commencing on the 9th day of May, 1961, said payments to be continued until the youngest child of the marriage of the above parties shall reach the age of eighteen (18) years and then the defendant, Earl M. Hooks, to be held in continuing contempt until the arrears in the amount of Four Thousand and Seventy ($4,070.00) Dollars has been paid in full; * * *."

It seems obvious to me that this order fixed no definite time at which Hooks was required to make the payment of $4,070. His monthly payments were to be continued until the younger child reached age eighteen, "and *then*," the order said, Hooks was to be "in continuing contempt until the arrears" in the amount of $4,070 had been paid in full. He was not expressly required or commanded to pay the $4,070 when the younger child reached age eighteen, but he was to be in contempt if he did not pay it *then* or thereafter.

We announced the controlling general rule in this area in the very recent case of Ex parte Eugene L. Slavin, Tex., 412 S.W. 2d 43, in this language:

"It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him."

In *Slavin* we quoted language from Ex parte Duncan, 42 Tex.Cr. 661, 62 S.W. 758 (1901), to the effect that when a court seeks to punish for disobedience of an

---

1. Emphasis throughout is mine.

order, the order *"must be in the form of a command,* and, when tested by itself, must speak definitely the meaning and purpose of the court in ordering." The indefiniteness in the order in *Duncan* was in the time fixed for performance of the ordered act. The holding of the majority in this case seems to me to be in direct conflict with the holdings in *Slavin* and *Duncan.* If the May, 1961 order fixed a time when Hooks was required to pay the $4,070, it was only by inference.

If the order fixed a time by inference when Hooks was required to pay the $4,070, the time was when the younger child reached age eighteen. The court had no power to require Hooks to make a support payment at that time, regardless of whether the payment was for pre-eighteen or post-eighteen support. This would seem to be crystal clear from the history of Article 4639a and prior judicial decisions.

Before enactment of Article 4639a in 1935, the law of this State did not authorize a court to require a parent to contribute to the support of his or her children except during the pendency of a divorce suit. Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931). Inasmuch as trial courts had no power before enactment of the statute to order a parent to make child support payments after a divorce judgment became final, the extent of the power conferred by the statute must be measured by the terms of the statute. See Ex parte Taylor, 137 Tex. 505, 155 S.W.2d 358 (1941). The provisions of the statute conferring and limiting the power are as follows:

" * * * and said court may by judgment, order either parent to make periodical payments for the benefit of such child or children, until same have reached the age of eighteen (18) years, or, said court may enter a judgment in a fixed amount for the support of such child or children * * * Said court shall have power and authority to alter or change such judgments, or suspend the same, as the facts and circumstances and justice may require, upon notice to such parent as above provided for, or with his or her consent."

It is at once apparent from the wording of the statute that the limitation on the period in which child support payments, either periodic or lump sum, may be required by the power thereby conferred, is when the child or children reach the age of eighteen. Our appellate courts have consistently held that our trial courts have no power to require a parent to make support payments beyond the time limited by statute. Thus when power of the courts to order child support payments was by statute limited to the period of time while divorce suits were pending, we recognized in Cunningham v. Cunningham, 120 Tex. 491, 40 S.W.2d 46, 75 A.L.R. 1305 (1931) that by our decision in Ex parte Davis, 101 Tex. 607, 608, 111 S.W. 394, 17 L.R.A.,N.S., 1140 (1908), we had declared the law to be that trial courts had no power by orders entered pending divorce to compel a husband to make payments for the support of his children "beyond the date of entry of the final judgment." See 40 S.W.2d 50. And see Ex parte Gerish, 42 Tex.Cr. 114, 57 S.W. 1123 (1900), in which the court held that a trial court judgment, incorporating the terms of an agreement of the parties as here, ordering child support payments beyond the time when a divorce judgment became final was to that extent void; and that a commitment of the defaulting husband to jail for contempt for failing to comply with the order was a violation of his constitutional right against imprisonment for debt. In Ex parte Hatch, 410 S.W.2d 773 (Tex.Sup.1967), only recently decided, we held under the present statute that a judgment which purported to require a father to make support payments for the benefit of a child both before and after she reached age eighteen "could be enforced only by contempt proceedings for failure to make payments due *before* the child reached eighteen years of age." If the trial court had no power to require Hooks to make

the payment of $4,070 after the younger child reached age eighteen, the order so doing is void; and it cannot be controlling that payment was ordered one hour rather than one year after she reached eighteen. The rule is well settled in this State, and is one of general acceptance, that a person may not be punished as for contempt for violating an order which a court had no power to enter, and may not be imprisoned to compel obedience to the order. Ex parte Lillard, 159 Tex. 18, 314 S.W.2d 800 (1958); Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588 (1948); Ex parte Castro, 115 Tex. 77, 273 S.W. 795 (1925); Ex parte Armstrong, 110 Tex.Cr. 362, 8 S.W.2d 674 (1928); 17 Am.Jur.2d 46, Contempt § 42; 12 A.L.R.2d 1059.

From the foregoing authorities, the law would seem to be settled that the contempt power may not be employed to punish for violation of, or to coerce compliance with court orders which fix no definite time for performance of the ordered act or which require performance beyond the time limited by statute. I can find nothing in Article 4639a indicating a legislative intent to change the well settled law of contempt. Thus the fact that "The entire sum embodied in the 1961 order in question was determined as a fixed and certain amount that was delinquent during the time the children were less than eighteen" cannot validly support the judgment committing Hooks to jail *unless* he was *commanded* to pay the same at a definite time before the younger child reached age eighteen. The majority seem to attach some overriding significance to the fact that when Article 4639a was enacted a provision was included conferring "full power and authority" to enforce ordered support payments by civil contempt proceedings. I attach none. The enforcement provision of the statute is pure surplusage; once the power to order support payments was conferred, the courts automatically *had* full power to enforce such payments by contempt proceedings, and no express grant of such power was needed. See Ex parte Davis, 101 Tex. 607, 608, 111 S.W. 394, 17 L.R.A.,N.S., 1140 (1908).

My second reason for saying that the contempt judgment is void, at least to the extent of its coercive provision, is because when it was entered the trial court had lost jurisdiction of the subject matter. On this question the temporary alimony cases are analogous. In Wright v. Wright, 6 Tex. 29 (Tex.Sup.1851), the trial court had ordered the husband to make alimony payments during pendency of a divorce suit. When the suit was later dismissed, three-fourths of the ordered payments had not been made. The wife sought collection of the arrearage through execution. Recovery was denied, not on the ground that such payments could only be enforced by contempt proceedings but for a more fundamental reason. The reason is found in the following language of the court (6 Tex. 31–32):

" * * * On the dismissal of the suit the order for alimony had no longer legal subsistence or vitality * * *. It is true that three-quarters of the alimony were unpaid; but whether it was the fault or misfortune of the appellee [wife] or fraud of the appellant [husband] that payment had not during pendency of the suit been enforced is in any aspect presented by this case wholly immaterial. For whatever may be the right of appellee, or whatever may be the wrong suffered from the appellant in relation to this claim, yet redress cannot be obtained by means of compulsory process upon a reversed and annulled judgment or decree. * * *

"Alimony during pendency of the suit is given to the wife for her present support, and the presumption is that it has been paid according to the terms of the decree, or that summary measures will be taken to secure its payment."

Wright v. Wright was followed in Ex parte Norton, 118 Tex. 581, 17 S.W.2d 1041 (1929). In that case the trial court ordered a husband to make certain alimony

payments during pendency of his divorce suit. He sought to take a nonsuit, but the court refused to grant it and thereafter held him in contempt for failure to make the payments. The court assessed a fine of $50 against the husband and ordered him committed to jail for three days and until he paid back alimony in the sum of $120. This court discharged the husband, holding that he had a right to take a nonsuit, and said (17 S.W.2d 1043):

"Had the court granted relator his legal rights and dismissed the divorce suit when he in open court took a nonsuit, he would have lost jurisdiction of the divorce proceedings as such, and would have had no power or jurisdiction to enter a contempt order for failure of relator to pay alimony, and, had the relator been accorded the right which was absolutely given him under the statute, *there would have been absolutely no way to enforce the payment of the back alimony claimed by the wife.*"

The two cases last cited stand for the broad proposition that when the event occurs which marks the outer limits of time within which support payments can be required, the court loses jurisdiction of the subject matter and can no longer enforce such payments by contempt or otherwise. The specific question presented by this case was noted but not decided in Ex parte Smart, 152 Tex. 229, 256 S.W.2d 398 (1953). But while it has not been decided in this State, it has been decided in other jurisdictions.

The question was squarely presented and decided by the Supreme Court of Oklahoma in McCartney v. Superior Court, Okmulgee Division, 187 Okl. 63, 101 P.2d 245 (1940). The Oklahoma statute providing for custody and support of children of divorced parents was remarkably like the Texas statute except that support payments could be ordered during minority. In *McCartney* the former wife sought through contempt proceedings instituted after the child of the parties had reached her majority to compel the father to pay support installments which accrued during the child's minority. The court stated the question to be decided thusly:

"The question involved is one of jurisdiction. Does the court retain its jurisdiction to enforce those payments, or did its jurisdiction terminate by operation of law when the minor reached the age of majority?"

The court answered that it was obvious from the language of the statute that the jurisdiction of the court to punish for contempt terminated with the child's attaining majority. And with the question again squarely presented in Lowry v. Lowry, 189 Okl. 650, 118 P.2d 1015 (1941), the Oklahoma court said:

"The purpose of the order in this case was the support of the minor children. * * * The force and life of the order expired on the date the youngest child attained majority. * * * We hold, therefore, that the trial court does not have jurisdiction to enforce its order to pay child support by contempt proceedings on accrued unpaid installments commenced after the child has reached majority."

The Oklahoma cases were cited with approval and followed, in the face of a vigorous dissent, by the Supreme Court of Minnesota in Lieder v. Straub, 230 Minn. 460, 42 N.W.2d 11 (1950), in which the court held that the trial court did not "have jurisdiction to enforce by contempt the payment of unpaid support money accruing prior to attainment of majority." Accord, Zieman v. Zieman, 265 Minn. 190, 121 N.W.2d 77 (1963). In Minnesota as in Oklahoma, the courts were authorized to order support for children during minority.

In Corbridge v. Corbridge, 230 Ind. 201, 102 N.E.2d 764 (1952), the Supreme Court of Indiana made the same holding with respect to a statutory provision for support of minor children, saying:

"The extraordinary remedy of attachment for a civil contempt of court is

available, not for the protection of the one having custody of the child, but for the benefit of the child, so that it may not want for necessities during the period of its minority. When the child reaches its majority the purpose and justification for the extraordinary remedy cease, and the court has no right to coerce the back payments of support by imprisonment."

The same rule has been adopted in Mississippi and Wisconsin. See Sides v. Pittman, 167 Miss. 751, 150 So. 211 (1933), and Halmu v. Halmu, 247 Wis. 124, 19 N.W.2d 317 (1945). The Supreme Court of Oregon reached an opposite conclusion without discussion of the jurisdictional problem. See State ex rel. Casey v. Casey, 175 Or. 328, 153 P.2d 700, 172 A.L.R. 862 (1944). With such overwhelming agreement on the issue among courts of last resort of other states, I think we would do well to follow the majority rule.

All of the equities in this case and some considerations of social policy weigh against relator. Relator did not support his children to the extent the court found him able to support them. He admits he is now able to make all payments he failed to make under the court's original judgment and which he has refused to make under the new judgment of 1961. But the question is one of judicial power and not one of equities or policy. Nevertheless, one policy consideration weighs on the side of relator. In this case the defaulting father is adjudged in contempt more than three years after the younger child reached age eighteen. Will the next contempt judgment requiring the payment of arrearages as a condition of purging be delayed five years? And the next, ten years and after the child's earnings are more than the father's? Where is the end?

I would discharge relator from the penalties and restraints of the void judgment.

GREENHILL and STEAKLEY, JJ., join in this dissent.

