Hortencia **MENDOZA**, Appellant,

v.

Baudelio **MENDOZA**, Appellee.

No. 16426.

Court of Civil Appeals of Texas, San Antonio.

May 6, 1981.

Rehearing Denied June 3, 1981.

Randolph M. Janssen, San Antonio, for appellant.

Oliver S. Heard, Jr., San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Appellant, Hortencia Mendoza, was granted a divorce from appellee, Baudelio Mendoza, under the "no fault" provisions of our divorce statutes. Tex.Family Code Ann. § 3.01 (Vernon 1975). On this appeal she complains only of the portions of the divorce decree relating to child support and the division of property.

The divorce decree recites that appellee is under no obligation to contribute to the support of the minor children of the parties because he is totally disabled. Appellant timely filed a motion for new trial complaining of the trial court's decision not to require appellee to contribute to the support of the children.

After a hearing was held on the motion for new trial, but before the court signed the order overruling such motion, appellant filed a motion to modify the support provisions of the original divorce decree. Several months later, on January 16, 1980, after appellant had perfected her appeal to this court, a hearing was held on the motion to modify, and on April 30, 1980, the court signed an order modifying the divorce decree by requiring appellee to pay the sum of $200.00 per month, beginning February 1, 1980, for the support of the children.

No complaint concerning the validity or propriety of the modification order is before us. Appellant's points concerning child support are limited to the trial court's order, in the original divorce decree, relieving appellee of all duty to support the children. Her complaint is that the children received no support from their father during the months intervening between June 27, 1979, the date of the original divorce decree, and February 1, 1980, when payments were required to begin under the modification order.

The judgment of which appellant complains, insofar as it relates to payment of child support, has, in effect, been set aside by the subsequent modification order. Assuming that the record before us establishes that the trial court abused its discretion by relieving appellee, in the original decree, of all obligation to make periodic payments for the support of the children, the evidence still furnishes no basis for the rendition of a judgment by this Court requiring appellee to pay any specific sum. At best, our judgment could only be one reversing the judgment below and remanding the cause to the trial court for a new trial on the question of child support.

Even if we assume that the reversal of the original divorce decree is not precluded by the subsequent order of modification and resist the temptation to discuss the effect of such a reversal on the subsequent modification order, it is clear that the question of child support during the months intervening between the date of the original decree and the subsequent modification order cannot be dealt with effectively by any decision of this court.

Section 14.05 of the Family Code provides that the trial court "may order either or both parents to make periodic payments or a lump-sum payment, or both" for the support of the children. It is clear that the statute contemplates the entry of an order requiring the making of payments in the future. This conclusion is strengthened by the fact that, prior to the enactment of legislation authorizing the divorce court to order child support payments to be made after the dissolution of the marriage, no such power existed. *Cunningham v. Cunningham*, 120 Tex. 491, 40 S.W.2d 46, 49–50 (1931). The purpose of the provisions contained in section 14.05 of the Family Code and its predecessors was to empower the court to "decree and compel the payment of

allowances for the support of dependent minor children after the entry of the divorce decree." *Ex parte Hooks,* 415 S.W.2d 166, 168 (Tex.1967).

■ When the legislature intended that provisions concerning support of children be retroactive so as to impose an obligation antedating the support order, it experienced no difficulty in expressing such intention. Thus, section 14.08(c)(2) of the Family Code, which provides for the modification of orders concerning child support, expressly empowers the court to modify retroactively support obligations which have accrued since the filing of the motion to modify. Because of this express provision, the modification order may be made effective as of the date the motion to modify was filed and need not be limited to being effective only from the date of the modification order. *See Casterline v. Burden,* 560 S.W.2d 499, 501 (Tex.Civ.App.—Dallas 1977, no writ).

Appellant's first two points of error furnish no basis for reversal.

In her next point appellant contends that the trial court abused its discretion in the division of the property by awarding an unfairly disproportionate amount of such property to appellee.

At the time of trial there was on deposit, in a "trust" account in the name of appellee's attorney, the sum of $48,196.38, which represented the net recovery by appellee in a suit for personal injuries suffered by him. The evidence showed that, of this amount, $7,222.01 was attributable to loss of earning capacity and thus constituted community property under the holding in *Graham v. Franco,* 488 S.W.2d 390 (Tex.1972).

The property awarded to appellant consisted of (1) a house and lot in San Antonio (neither the judgment nor the findings of fact assign a value to this property, but according to appellee's inventory and appraisement which was introduced into evidence this property had a value of approximately $8,000.00); (2) approximately $460.00 in a checking account; (3) all personal property in her possession or control; (4) a bedspread and dishes given to her by her parents which, at the time of trial, were in appellee's possession; and (5) $4,500.00 in cash to be paid out of the trust account which contained appellee's net recovery for his personal injuries.

Appellee received (1) a house and lot which, according to the inventory and appraisement, had a value of approximately $8,500.00; (2) a checking account containing approximately $500.00, according to the inventory and appraisement; (3) a savings account containing $2,568.58 according to the inventory and appraisement; (4) a 1968 Ford pickup truck having a value of $375.00 according to the inventory and appraisement; (5) household appliances and clothing having a value of approximately $500.00 according to the inventory and appraisement; (6) an automobile to which no value is assigned (this item is not mentioned in the inventory and appraisement); (7) the remainder of the money in the trust account "after the sum of $4,500.00 is paid to [appellant] and the sum of $1,000.00 is paid to [appellant's attorney] as attorneys' fees.[1]

The divorce decree refers to certificates of deposit, totaling $4,000.00 held by appellee, and awards these to the minor children of the parties "to be held in trust for such children by" appellant.

■ Appellant received $12,960.00 of community assets. Appellee received community assets having a value of $15,165.59, ignoring the fact that the divorce decree required him to pay $1,000.00 as his wife's attorney's fees and also imposed on him a potential liability of $2,100.00 as additional attorney's fees. The fact that the husband is required to pay attorney's fees is a factor which may be considered by the court in making an equitable division of the community property. *Carle v. Carle,* 149 Tex. 469, 234 S.W.2d 1002, 1005 (1950). Although there is nothing in the record to indicate that the award of such fees to the wife was

1. Because $7,222.01 represented the community property portion of the appellee's personal injury recovery, and $4,500 of this amount was awarded to appellant, the appellee's net community property recovery from the trust account amounted to $2,722.01, exclusive of the order to pay attorney's fees.

considered by the trial court, there is no indication that it did not take the award of attorney's fees into consideration in making the property division. *See Murff v. Murff,* 615 S.W.2d 696 (Tex.1981). In *Carle,* the Supreme Court recognized that the practical effect of a decree ordering the payment of the wife's attorney's fees by the husband may be to award him less of the community estate than that awarded to the wife. 234 S.W.2d at 1005.[2]

Under the circumstances, bearing in mind that appellee, according to the trial court's findings, has no earning capacity, it cannot be said that the division of the community assets in this case was unfair or inequitable. It is well settled that the trial court has wide discretion in the division of property on divorce, and that division will be disturbed on appeal only when an abuse of discretion is shown. *Hedtke v. Hedtke,* 112 Tex. 404, 248 S.W.2d 21 (1923).

As already pointed out, appellant sought a divorce on "no fault" grounds. Even if it be assumed that "fault" may be considered a relevant factor in making a division of the property in a no-fault case, the trial court need not take that factor into consideration. In any event, the evidence of fault in this case is extremely meager. *See Young v. Young,* 609 S.W.2d 758, 762 (Tex.1980).

The judgment of the trial court is affirmed.

2. The assumption that a divorce court may make an unequal division of the community estate of the parties is not beyond challenge in view of the holding in *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977). While that case held only that the trial court could not divest a party of his title to his separate realty, the majority opinion stressed the fact that a decree divesting the husband of his interest in separate realty and transferring such interest to the wife would be a violation of Tex.Const. art. I, § 19, which prohibits the deprivation of property "except by the due course of the law of the land." Under the view of the majority opinion, such a decree "would not have been a constitutional act even if the legislature had expressly authorized the divestiture of one person's property and its vesting in another person." 554 S.W.2d at 141.

After the decision in *Eggemeyer,* one of the members of the dissenting faction in that case wrote an opinion expressing the view of a majority that the *Eggemeyer* rationale compelled the conclusion that a party could not be divested of title to separate personalty without violation of the constitutional provision relied on in *Eggemeyer. Campbell v. Campbell,* 613 S.W.2d 236 (Tex.1980). Pending action by the Supreme Court on the motion for rehearing in *Campbell,* the parties settled their dispute and the original opinion was withdrawn. 24 Sup. Ct.J. 84 (Nov. 22, 1980). Although the original *Campbell* opinion must be viewed as having no precedental value, it is clear that a majority of the Supreme Court felt that the separate personal property of one spouse cannot be constitutionally taken from that spouse and given to the other.

It would appear that completely divesting one spouse of an interest in a community asset and giving such interest to the other spouse is no less a divestiture of title than that condemned in *Eggemeyer.* There is nothing in the "due course of the law of the land" provision of the Texas Constitution which suggests that an undivided interest in a community asset is not entitled to protection under such provision. There is no rational basis for suggesting that the power of the divorce court depends on whether the property is separate or community. The constitutional prohibition and limitation applies to all property, real and personal, separate and community. *See* Castleberry, *Constitutional Limitations on the Division of Property upon Divorce,* 10 St. Mary's L.J. 37, 45–6 (1978). It can also be persuasively argued that the notion of an unequal division of community assets is inconsistent with the philosophy underlying the adoption of the community property system by the civil law jurisdictions. *Id.,* at 47–8.

Despite the obvious implications of *Eggemeyer,* the Texas courts appear to be firmly committed to the notion that a divorce court may decree an unequal division of the community estate. The holding in *Young v. Young,* 609 S.W.2d 758 (Tex.1980), that in dividing the community estate the trial court may, at least in fault cases, consider fault, makes no sense unless it be assumed that an unequal division is constitutionally permissible. The opinion in *Murff v. Murff,* 615 S.W.2d 696 (Tex.1981) also clearly rests on such an assumption. In neither *Young* nor *Murff* is there found an indication that the Supreme Court considered either *Eggemeyer* or the philosophy underlying the adoption of the community property system as an obstacle to depriving one party of an interest in property and transferring such interest to the other party to the divorce action.