ORIGINAL NO. _____ 1465·14

IN THE TEXAS COURT OF CRIMINAL APPEALS

CAROL PASELK,

Petitioner

v.

STATE OF TEXAS

Respondent

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 30 2015

Abel Acosta, Clerk

FILED IN
COURT OF CRIMINAL APPEALS

JAN 30 2015

Abel Acosta, Clerk

# Amended Petition For Discretionary Review

Petition in Cause No. CV14-08223

From the 8th Judicial District Court of Hopkins County, Texas and

The Court of Appeals for the 6th District of Texas

Oral Argument Requested

Carol Paselk
Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

NO. _____

IN THE TEXAS COURT OF CRIMINAL APPEALS

---

CAROL PASELK,

Petitioner

v.

STATE OF TEXAS

Respondent

---

# Amended Petition For Discretionary Review

Petition in Cause No. CV14-08223
From the 8th Judicial District Court of Hopkins County, Texas and
The Court of Appeals for the 6th District of Texas

Oral Argument Requested

Carol Paselk
Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

# Table of Contents

Table of Contents ................................................................................ 2

Index of Authorities ............................................................................ 3

Immediate Release Requested From Already Null And Void Judgments ............... 10

Statement Regarding Oral Argument .................................................... 11

Statement of the Case ........................................................................ 11

Statement of Procedural History ......................................................... 12

Reasons For Review ......................................................................... 12

I.   The Appellate Court erred in not considering that the Texas Legislature has excluded the "**Judge**" of the Hopkins County Court At Law from presiding over allegations of cruelty to a livestock animal. Tex. R.App.P. 66.3(b), making the judgments of conviction already null and void.

II. The Court of Appeals failed to consider important questions of state law that have not been, but should be, settled by this Court. Tex.R.App. P. 66.3(b)

III. The Court of Appeal failed to consider important questions of state and federal law in conflict with applicable decisions of the Supreme Court of the United States. Tex.R.App. P. 66.3(c)

IV. The Appellate Court erred in not considering the fact that inadmissible evidence was admitted by the trial court.

Conclusion ..................................................................................... 26

Prayer For Relief ............................................................................. 27

Certificate of Compliance ................................................................. 28

Certificate of Service ....................................................................... 28
APPENDIX:

APPENDIX A:  Photos of Hay and Feed Purchased and Fed

APPENDIX B:  Photos of Horses

APPENDIX C:  Court Transcript Pages of Testimony

APPENDIX D:  Memorandum Opinion of the 6th District Court of Appeals

# INDEX OF AUTHORITIES

**CASE LAW:**

**Texas Cases:**

*Bass v. State,* 427 S.W.2d 624, 626 (Tex.Cr.App.1968)

*Billings v. Atkinson,* 489 S.W.2d 858, 859 (Tex. 1973.)

*Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App. 1991)

*Bragg v. State,* 109 Tex.Cr.R. 632, 6 S.W.2d 365 (1928)

*Camacho v. Samaniego,* 831 S.W.2d 804, 811 (Tex.1992).

*Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926)

*Ex parte Adams,* 768 S.W.2d 281, 293 (Tex. Crim. App. 1989)

*Ex parte Armstrong,* 110 Tex.Cr.R. 362, 8 S.W.2d 674, 675, 676 (1928)

*Ex parte Beck,* 922 S.W.2d 181 (Tex.Crim. App.1996)

*Ex parte Caldwell,* 383 S.W.2d 587, 589 (Tex.Cr.App.1964)

*Ex parte Drake,* 883 S.W.2d 213, 215 (Tex.Crim.App.1994)

*Ex parte Paprskar,* 573 S.W.2d 525 (Tex.Cr.App.1978)

*Ex parte Sandoval*

*Ex parte Seidel,* 39 S.W.3d 221, 224, 225 at n. 4 (Tex.Crim.App.2001).

*Ex parte Vasquez,* 122 Tex.Cr.R. 475, 56 S.W.2d 190 (1933)

*Garcia v. Dial,* 596 S.W.2d 524 (Tex.Cr.App.1980)

*Gill v. Snow,* 644 S.W.2d 222, 224 (Tex. App.1982, no writ)

*Glenn v. Dallas County Bois D'Arc Island Levee Dist.,* 282 S.W. 339 (Tex.Civ.App.1926)

*Granger v. Folk,* 931 SW 2d 390, Tex: Court of Appeals, 9th Dist. (1996)

*Industrial Foundation of The South v. Texas Industrial Accident Board,* 540, S.W.2d 668, 682 (Tex. 1976)

*Marin v. State,* 851 S.W.2d 275, 280 (Tex.Crim.App.1993)

*Moore v. State,* 821 S.W.2d 429, 431 (Tex.App.—Waco 1991, no pet);

---

*Nix v. State,* 65 S.W.3d 664, 673, (Tex.Crim.App.2001)

*Parr v. State,* 108 Tex.Cr.R. 551, 1 S.W.2d 892 *(1928)*

*Solon v. State,* 5 Tex.App. 301 (1878)

*State v. Roberts,* 940 SW 2d 655 - Tex: Court of Criminal Appeals 1996

*Stine v. State,* 908 SW 2d 429 - Tex: Court of Criminal Appeals 1995

*Stoker v. State,* 788 S.W.2d 1, 10 (Tex.Crim.App.1989)

*Walker v Packer ,* 827 S.W.2d 833, 840 (Tex. 1992).

*Woodard v. State,* 86 Tex.Cr.R. 632, 218 S.W. 760 (1920)


**United States:**


Griswald v. Conneticut, 381 U.S. 479 (1965)

*Kinnard v. U.S.,* 313 F.3d 933, 2002 FED App. 0427P (6th Cir. 2002)

*Klugh v. U.S.,* 620 F.Supp. 892 (D.S.C. 1985)

*Mapp* v. *Ohio,* 367 U. S. 643 (1961)

*Moore* v. *Illinois,* 408 U. S. 786, 810 (1972) (opinion of MARSHALL, J.)

*Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)

*United States v. San Filippo,* 564 F.2d 176, 178 (5th Cir. 1977)

*Valley v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116 (1920)

*Wiggins V. Smith,* 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)

*Yarborough v. Gentry,* 540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003)


**Michigan:**

*Fritts v. Krugh,* 92 N.W.2d 604, 354 S.Ct. of Mich. 97. (1958).


**Oregon:**

*State of Oregon v. Amanda Newcomb,* Multnomah County Circuit Court, 110443303, A149495 (2014)

**Constitution:**

United States Constitution: Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments

Article 1, Section 9 of the Texas Constitution

Article 1, Section 10 of the Texas Constitution

Article 1, Section 12 of the Texas Constitution

Article 1, Section 14 of the Texas Constitution

Article 1, Section 19 of the Texas Constitution

Article 5, Section 19 of the Texas Constitution

**Statutes and Rules:**

Texas Code of Criminal Procedure § 18.10, § 18.11

Texas Government Code § 25.1142

Texas Health & Safety Code § 821.0211

Texas Penal Code § 42.09

Texas Rules of Appellate Procedure, 66.3(b)(c)

Fed. Rules Civ. Proc., Rule 60(b)(4),

Petitioner Carol Paselk contends that the judgments of conviction against her are already null and void.

"Habeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which renders the judgment void or for denials of fundamental or constitutional rights)." *Ex parte Drake*, 883 S.W.2d 213, 215 (Tex.Crim.App.1994)

**"The writ of habeas corpus, for example, is available to set aside a criminal conviction on the basis of any jurisdictional defect in the proceedings which led to it, <u>no matter how remote in time</u>." *Stine v. State*, 908 SW 2d 429 - Tex: Court of Criminal Appeals 1995.**

"This Court has long held that habeas corpus is an appropriate remedy to attack a void judgment or sentence." *See Ex parte Seidel*, 39 S.W.3d 221, 224, 225 at n. 4 (Tex.Crim.App.2001); *Ex parte Beck*, 922 S.W.2d 181 (Tex.Crim. App.1996);

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner requests oral argument. Argument would assist the Court because resolution of the grounds for review depends upon a detailed exploration of the facts of the cases. Further, oral argument would provide this Court with an opportunity to question parties regarding their positions.

## STATEMENT OF THE CASE:

Petitioner's Petition For Writ of Habeas Corpus was denied by the 8th Judicial District Court without a hearing. The Court of appeals upheld the denial. Petitioner contends that the judgments of conviction are already null and void. According to Texas Health & Safety Code § 821.0211, **the particular "Judge", who issued the judgments of conviction, is lawfully excluded by the Legislature from presiding over allegations of cruelty to a livestock animal**. As a result of the Legislature's exclusion of **this particular "Judge"** to preside over allegations of cruelty to a livestock animal, the Judgments of conviction are already null and void, for lack of jurisdiction. The 6th District Court of Appeals did NOT consider or even comment on the fact that **this particular "Judge"**, of the Hopkins County Court At Law, is excluded **by the Legislature** from presiding over allegations of cruelty to a livestock animal, because she "*gives preference to family law matters*."

Beyond the fact that this "**Judge**" of the Hopkins County Court At Law is

excluded by the Legislature from presiding over allegations of cruelty to a livestock animal, the 6th Court of Appeals failed to consider the ineffective assistance of both the court appointed defense and appeal counsel, and that the "**Judge**" of the Hopkins County Court At Law also allowed inadmissible evidence and hearsay to be used to obtain conviction against Petitioner Paselk.

## STATEMENT OF PROCEDURAL HISTORY

The judgments of conviction were entered on October 29, 2009. Petitioner filed a Petition For Habeas Corpus with the 8th Judicial District Court on April 18, 2014. The 8th Judicial District Court denied Paselk's Petition For Writ of Habeas Corpus without a hearing. Petitioner Paselk mailed her Appellant's Amended Brief to the 6th District Court of Appeals in Texarkana on July 25, 2014. The Court of Appeals denied Paselk's Petition For Writ of Habeas Corpus, even though the judgments of conviction are already null & void.

## REASONS FOR REVIEW

The 6th Court of Appeals failed to consider that the misdemeanor convictions against this Petitioner are already null and void because the "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal. The 6th Court of Appeals failed to consider that

---

inadmissible evidence and hearsay were used to obtain convictions against this Petitioner. The 6th Court of Appeals failed to consider that convictions against Petitioner Paselk were obtained because of the ineffective assistance of counsel. The 6th Court of appeals did not discharge its sworn duty to defend and uphold the rights of this Petitioner protected and guaranteed by the U.S. Constitution, and the Texas Constitution.

1. The Appellate Court erred in not considering that the Texas Legislature has lawfully excluded the "**Judge**" of the Hopkins County Court At Law from presiding over allegations of cruelty to a livestock animal. Tex. R.App.P. 66.3(b)

2. The Court of Appeals failed to consider important questions of state law that have not been, but should be, settled by this Court. Tex.R.App. P. 66.3(b)

3. The Court of Appeals failed to consider important questions of state and federal law in conflict with applicable decisions of the Supreme Court of the United States. Tex.R.App. P. 66.3(c)

4. The Appellate Court erred in not considering the fact that because of ineffective assistance of council, exculpatory evidence was not presented to the jury and court, and inadmissible evidence was admitted by the court.

**I. The Appellate Court erred in not considering that the Texas Legislature has excluded the "Judge" of the Hopkins County Court At Law from presiding over allegations of cruelty to a livestock animal. Tex. R.App.P. 66.3(b), making the**

**judgments of conviction already null and void.**

The Court of Appeals failed to consider that the judgments of conviction against Petitioner Paselk are already null and void because the "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal. This case confirms the Texas Supreme Court's statement:

> *"This Court has previously voiced its concerns over the difficulties created for the bench, the bar, and the public by the patchwork organization of Texas' several trial courts. As Thomas Paine observed: "[T]he more simple anything is, the less liable it is to be disordered, and the easier repaired when disordered. Paine, Common Sense 3 (1776). This case is yet another confirmation that "confusion and inefficiency are endemic to a judicial structure with different courts of distinct but overlapping jurisdiction."* Camacho v. Samaniego, 831 S.W.2d 804, 811 (Tex.1992).

The Court of Appeals failed to consider that the judgments of conviction against Petitioner Paselk are already null and void because the "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal. Texas Government Code § 25.1142 gives the Judge of the Hopkins County Court At Law the same jurisdiction and authority as a District Court Judge. The "**Judge**" of the Hopkins County Court At Law "*gives preference to family law matters,*" by agreement with the Judges of the 8th Judicial District Court[1] and the

---

1  TEXAS GOVERNMENT CODE § 24.108. 8TH JUDICIAL DISTRICT (DELTA, FRANKLIN, HOPKINS, AND RAINS COUNTIES). (a) The 8th Judicial District is composed of Delta, Franklin, Hopkins, and Rains counties.

---

62nd District Court[2]. Texas Health & Safety Code § 821.0211 excludes Judges *"who give preference to family law matters"*, which is clearly a <u>protection and safeguard</u> for livestock owners, codified by the Legislature. Texas Health & Safety Code, Chapter 821, Subchapter B, Section 821.0211 ADDITIONAL DEFINITION,[3] clearly excludes *"district court judges who give preference to family law matters"* from presiding over matters of cruelty to livestock animals. There is no ambiguity in the language codified by the Legislature. "If a statute is clear and unambiguous, we give effect to its plain meaning." <u>*Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App. 1991)</u>.

In <u>*Granger v. Folk*, 931 SW 2d 390, Tex: Court of Appeals, 9th Dist. (1996)</u>, the Texas Court of Appeals shows the union of Texas Health & Safety Code § 821 and Texas Penal Code § 42.09, stating:

> *"Clearly, two avenues exist for the State in protecting animals from cruel treatment, i.e., criminal prosecution under Section 42.11 of the Penal Code and the civil remedy provided under Section 821.023 of the Health and Safety Code. A close reading of paragraphs (a) and (b) of Section 821.023 may provide some slight illumination. Paragraph (a) presumes a criminal proceeding prior to the civil proceeding while paragraph (b) presumes the reverse. Obviously, in the criminal proceeding, a defendant may face loss of*

---

2  TEXAS GOVERNMENT CODE § 24.164. 62ND JUDICIAL DISTRICT (DELTA, FRANKLIN, HOPKINS, AND LAMAR COUNTIES). (a) The 62nd Judicial District is composed of Delta, Franklin, Hopkins, and Lamar counties.

3  Texas Government Code § 821.0211. ADDITIONAL DEFINITION. In this subchapter, "magistrate" means any officer as defined in Article 2.09, Code of Criminal Procedure, except that the term does not include justices of the supreme court, judges of the court of criminal appeals, or courts of appeals, judges or associate judges of statutory probate courts, or judges or associate judges of district courts that give preference to family law matters or family district courts under Subchapter D, Chapter 24, Government Code.

*freedom or fine or both, whereas, a proceeding under Section 821.023 may subject the defendant to a loss, forfeiture and confiscation of property rights and interests. In either case, the defendant is entitled by right to all those guarantees affording full due process." [Petitioner contends that 42.11[4] refers to "destruction of the flag", and is a typographical error which is actually meant as 42.09.]*

The "**Judge**" of the Hopkins County Court At Law had the duty and responsibility to transfer the case against this Petitioner to one of the two District Courts or even to the County Court, all of which do NOT *"give preference to family law matters"*, and thereby have constitutional and statutory jurisdiction provided by the Legislature to preside over allegations of cruelty to a livestock animal. "Trial court jurisdiction over a case is an absolute systemic requirement." *Marin v. State, 851 S.W.2d 275, 280 (Tex.Crim.App.1993).* "Unless the power or authority of a court to perform a contemplated act can be found in the Constitution or laws enacted thereunder, it is without jurisdiction and its acts without validity." *Ex parte Armstrong, 110 Tex.Cr.R. 362, 8 S.W.2d 674, 675, 676 (1928),* See also *Solon v. State, 5 Tex.App. 301 (1878).*

The Court of Appeals failed to consider that the "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal. A threshold issue in any case is whether the court has the

---

4    Texas Penal Code, Sec. 42.11. DESTRUCTION OF FLAG. (a) A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas.

---

jurisdiction to resolve the pending controversy. In *Ex parte Armstrong, 110 Tex.Crim. 362, 8 S.W.2d 674 (App.1928),* the Court upheld, "... This issue of jurisdiction is fundamental and cannot be ignored. Accordingly, a court may *sua sponte* address the issue because subject matter jurisdiction cannot be conferred by agreement of the parties; jurisdiction must be vested in a court by constitution or statute. *Garcia v. Dial, 596 S.W.2d 524, 527 (Tex.Cr.App.1980)*; *and, Ex parte Caldwell, 383 S.W.2d 587, 589 (Tex.Cr.App.1964).* In short, each court has jurisdiction to determine whether it has jurisdiction. *Ex parte Paprskar, 573 S.W.2d 525 (Tex.Cr.App.1978).*

The Court of Appeals failed to consider that the "**Judge**" of the Hopkins County Court At Law clearly abused her discretion by presiding over the trial against this Petitioner for allegations of cruelty to a livestock animal, for which she is excluded by the Legislature. "An abuse of discretion occurs if the trial court clearly failed to analyze or apply the law correctly." *Walker v Packer , 827 S.W.2d 833, 840 (Tex. 1992).*

The Court of Appeals failed to consider that Petitioner was denied the <u>protection and safeguard</u> that the Legislature codified under § 821.0211, excluding judges "*who give preference to family law matters*", to insure the fair administration of justice, and to insure a fair and impartial tribunal. This Petitioner was denied her guaranteed rights to lawful due process of law protected by the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article 1, Section 19 of the Texas Constitution. The "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from

issuing judgments of conviction in matters alleging animal cruelty because she gives "preference to family law matters", therefore the judgments of conviction against this Petitioner are already null and void, and must be reversed and vacated.

## II. The Court of Appeals failed to consider important questions of state law that have not been, but should be, settled by this Court. Tex.R.App. P. 66.3(b)

As clearly shown above, this Honorable Court must decide a very important question of state law that was not settled by the Court of Appeals. This Court must settle the question whether the "**Judge**" of Hopkins County Court At Law is excluded from presiding over allegations of cruelty to a livestock animal. This Court must settle the question whether the judgments of conviction against this Petitioner are already null and void for lack of the "Judge's" subject matter jurisdiction.

According to Texas Health & Safety Code 821.0211, the "Judge" of the Hopkins County Court At Law, who gives "*preference to family law matters*" by agreement with the Judges of the 8th and 62nd Judicial District Courts, is excluded by the Legislature from presiding over allegations of animal cruelty.

The question of the jurisdiction of the convicting court may be raised at any time. See *Bass v. State,* 427 S.W.2d 624, 626 (Tex.Cr.App.1968); *Ex parte Vasquez,* 122 Tex.Cr.R. 475, 56 S.W.2d 190 (1933); *Bragg v. State,* 109 Tex.Cr.R. 632, 6 S.W.2d 365 (1928); *Parr v. State,* 108 Tex.Cr.R. 551, 1 S.W.2d 892 (1928); *Woodard v. State,* 86

Tex.Cr.R. 632, 218 S.W. 760 (1920). "Judicial action without jurisdiction is void." *Cleveland v. Ward*, 116 Tex. 1, 285 S.W. 1063 (1926). "Judgment which court is without jurisdiction to render is void." *Glenn v. Dallas County Bois D'Arc Island Levee Dist.,* 282 S.W. 339 (Tex.Civ.App.1926).

"Void" convictions should be defined as those in which the trial court lacked jurisdiction over the person or subject matter or in which the trial judge lacked qualification to act in any manner. *See, e.g., Ex parte Seidel,* 39 S.W.3d 221, 226-27 (Tex.Crim.App.2001) (Womack, J., dissenting, joined by Keller, P.J. & Meyers, J.). *See also Nix v. State,* 65 S.W.3d 664, 673, (Tex.Crim.App.2001) (discussing "void" judgments and categorizing them in a "nearly exclusive" list as: "(1) the document purporting to be a charging instrument (i.e. indictment, information, or complaint) does not satisfy the constitutional requisites of a charging instrument thus the trial court has no jurisdiction over the defendant; (2) the trial court lacks subject matter jurisdiction over the offense charged, such as when a misdemeanor involving official misconduct is tried in a county court at law; (3) the record reflects that there is no evidence to support the conviction; or (4) an indigent defendant is required to face criminal trial proceedings without appointed counsel, when such has not been waived, in violation of *Gideon v. Wainwright*") (footnotes omitted).

"Jurisdiction may be concisely stated to be the right to adjudicate concerning the *subject matter* in a given case. [Citation omitted] Unless the power or authority of a

court to perform a contemplated act can be found in the *Constitution or laws enacted thereunder,* it is without jurisdiction and its acts without validity." *Ex parte Armstrong,* 110 Tex.Cr.R. 362, 8 S.W.2d 674, 675, 676 (1928),* "Jurisdiction of the subject matter cannot be conferred by agreement; this type of jurisdiction exists by reason of the authority vested in the court by the Constitution and statutes. *Ex parte Caldwell,* 383 S.W.2d 587 (1964); *Morrow v. Corbin,* 122 Tex. 553, 62 S.W.2d 641 (1933); *Ex parte Armstrong,* supra.

"Furthermore, it is likewise axiomatic that where there is no jurisdiction, the power of the court to act is as absent as if it did not exist," *Ex parte Caldwell,* supra at 589, and any order entered by a court having no jurisdiction is void. E. g., *Ex parte Sandoval,* supra; *Ex parte Armstrong,* supra. "Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process," Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. Const. Amend. 5 - *Klugh v. U.S.,* 620 F.Supp. 892 (D.S.C. 1985). "A void judgment, order or decree may be attacked at any time or in any court, either directly or collaterally" - The law is well-settled that a void order or judgment is void even before reversal. *Valley v. Northern Fire & Marine Ins. Co.,* 254 U.S. 348, 41 S.Ct. 116 (1920).

"A "void judgment" as we all know, grounds no rights, forms no defense to actions taken there under, and is vulnerable to any manner of collateral attack (thus here,

by). No statute of limitations or repose runs on its holdings, the matters thought to be settled thereby are not res judicata, and years later, when the memories may have grown dim and rights long been regarded as vested, any disgruntled litigant may reopen the old wound and once more probe its depths. And it is then as though trial and adjudication had never been." *Fritts v. Krugh*, 92 N.W.2d 604, 354 S.Ct. of Mich. 97. (1958).

Case law from Federal and state courts all clearly show that the judgments of conviction against this Petitioner are already null and void, because the Legislature has excluded this particular "Judge" who did not have the jurisdiction to preside over the trial against this Petitioner.

**III. The Court of Appeals failed to consider important questions of state and federal law in conflict with applicable decisions of the Supreme Court of the United States. Tex.R.App. P. 66.3(c)**

As shown above, the Court of Appeals failed to consider that Petitioner Paselk's rights to lawful due process, guaranteed and protected by the 5th and 14th Amendments of the U.S. Constitution, have been seriously compromised as a result of the trial court's judgment of conviction against this Petitioner.

I. The Court of Appeals failed to consider that the Warrant For Animal Seizure is nothing more than a "General Warrant" which has been prohibited and outlawed by the 4th Amendment for over two hundred years.**(C.R. pgs. 73-74)** The Warrant violates

Petitioner Paselk's Constitutional, as well as statutory, rights and protections. **(C.R. pgs. 73-74)** The Warrant fails to name Thoroughbred horses, and geldings with were simply taken from Paselk's farm, and does NOT particularly describe any individual horse or location on the farm where any particular horse would be found. The Warrant violates Petitioner's rights to be free from unreasonable searches and seizures protected by the 4th Amendment of the U.S. Constitution and Article 1, Section 9 of the Texas Constitution, as well as directives for a lawful warrant found in Texas Code of Criminal Procedure, Chapter 18. Because the warrant is an outlawed and prohibited "general warrant" there is no admissible evidence.

Photos taken six days AFTER the entire herd of horses were taken, show horses in good condition were taken with the "general warrant." **(C.R. pgs. 77-82) (APPENDIX B)** Nothing on the Warrant describes any particular horse. This means that no particular horse was the subject of the seizure, but rather law enforcement and County Attorney Dustanna Rabe picked through the entire herd of horses AFTER they were taken from Petitioner's farm, and AFTER these horses were subject to mishandling, and intentional alteration of their condition. No Veterinary evaluation was done of any horse BEFORE they were taken from the farm to establish the true condition of any horse BEFORE it was taken.

II.     The Court of Appeals failed to consider that Testimony from State's witnesses Sgt. Tanner Crump, Melanie DeAeth, Pamela Dountas, and Chief Deputy

---

Ricky Morgan actually exonerates Petitioner Paselk from any allegations of cruelty to a livestock animal.

After spending an hour and a half inspecting Paselk's farm and horses, Hopkins County Sheriff Department Sgt. Tanner Crump filed his official eyewitness report, stating **"I do not feel that the horses are in need of immediate care or removal from the owner"**, **(C.R. pg. 72)** Crump further stated, **"Not all of the horses were poor...Most of the horses that were poor were older horses and it is expected that they would not look as good as horses that were younger."**(C.R. pg. 72)

Six days later, with no further investigation and no contact with Paselk, Crump to filed his "Application For Warrant To Seize Animals" the language of which is in complete conflict with his official eyewitness report.(C.R. pgs. 73) Crump testified the reason he made the complete reversal of statements is because of second hand statements he received from Lt. Henry Turner that the "rescues" were *withdrawing their support.* Court Appointed Defense Counsel, Steve Lilley, failed to show the jury that there was no possible way the "rescues" could be *withdrawing their support,* because their testimony verified they gave only a very minimal **"one time"** during a four month period, verifying the State's witnesses were lying. See sworn testimony in Clerk's Record, pgs. 56-60 and Letters of Support, Clerks Record, pgs. 113-119. **(SEE APPENDIX C for copies of the official court transcript pages.) (SEE ALSO APPENDIX A)** "If the state knowingly presented perjured testimony, a writ

application can be granted." *Ex parte Adams*, 768 S.W.2d 281, 293 (Tex. Crim. App. 1989). "Due process is violated when the prosecutor although not soliciting false evidence from a government witness, allows it to stand uncorrected when it appears". *United States v. San Filippo*, 564 F.2d 176, 178 (5th Cir. 1977)

One of the most basic elements of fairness in a criminal trial is that available evidence tending to show innocence, as well as that tending to show guilt, be fully aired before the jury; more particularly, it is that the State in its zeal to convict a defendant not suppress evidence that might exonerate him." See *Moore v. Illinois*, 408 U. S. 786, 810 (1972) (opinion of MARSHALL, J.). Throughout the trial, County Attorney Dustanna Rabe erroneously continued to make the jury believe that the "rescuers" had been supporting Paselk and feeding her horses for a long period of time. Lilley failed to object. Lilley failed to show the jury the TRUTH that the "rescues" were not "supporting" Paselk. Lilley failed to show the jury photos of hay purchased by Paselk. **(SEE APPENDIX A )** The TRUTH would have induced a reasonable doubt in the minds of the jurors to avoid conviction. Paselk had a Constitutionally protected right to a fair and impartial trial and these photos should have been shown to the jury.

III.     The Court of Appeals also failed to consider that the judgments of conviction against Paselk were obtained as a result of serious "ineffective assistance of counsel". Paselk directs the Court to pgs. 36-61 of the Clerk's Record for a more indepth assessment of the ineffective assistance of counsel. Paselk's court appointed

defense counsel, Steve Lilley, and court appointed "appeals" counsel Gene Stump, both made errors so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment", *Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 Cl 984)*; *Kinnard v. US., 313 F.3d 933, 2002 FED App. 0427P (61" Cir. 2002)*, "and did not provide reasonably effective assistance," *Strickland v. Washington. 466 U.S. 668. 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)*; "and in that counsel's performance fell below an objective standard of reasonableness" *Wiggins v. Smith, 539 U.S. 510, 123 S. Ct. 2527. 156 L. Ed. 2d 471 (2003)*; *Yarborough v. Gentry. 540 U.S. 1, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003)*; *Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 Cl 984)*;

**IV. The Appellate Court erred in not considering the fact that inadmissible evidence was admitted by the trial court.**

A fact that this honorable Court must consider before making any decision to grant or deny this Petitioner's Petition For Writ of Habeas Corpus is shown above in the contradictions of the testimony of four of the states witnesses under oath - Melanie DeAeth, Pamela Dountas, Sgt. Tanner Crump and Chief Deputy Ricky Morgan - which exonerates Petitioner Paselk.

The Court of Appeals failed to consider that inadmissible evidence obtained through warrantless search was used against this Petitioner, in violation of her right to

privacy protected by the 14th Amendment. In *Mapp v. Ohio*, 367 U. S. 643 (1961), the Supreme Court held that evidence collected from an unlawful search be excluded from trial. The trial court "Judge" allowed as evidence blood and fecal samples that were "supposedly" obtained from horses "allegedly" taken from Paselk's farm property.

There was NO lawful chain of custody of any of the "horses". No Veterinarian was on-site to professionally evaluate any of the horses BEFORE they were taken from the farm, therefore no "Beginning Chain of Custody" was ever established. "Proof of the beginning and the end of the chain will support admission of the evidence barring any showing of tampering or alteration." *Stoker v. State*,788 S.W.2d 1, 10 (1989). Without the establishment of the original condition of any of the horses BEFORE they were taken from the farm there is no possible way to prove that the horse were not subjected to the intentional tampering with their condition and the alteration of their condition AFTER they were removed from Paselk's farm.

There was No control of the horses (the evidence) by either law enforcement or the court over the safe keeping of any of the horses taken from Paselk's farm, in violation of TCCP 18.10 and 18.11. The so called blood and fecal "samples" were authorized solely by private citizens, who had immediately removed horses, taken from Paselk's property, outside of the jurisdiction of Hopkins County without any Court order authorizing the removal and without any court order directing the manner of safe keeping for any of the horses.(TCCP 18.10 & 18.11) These private citizens had NO

court order or lawful authority to invade the body of any horse allegedly taken from Paselk's property and then conduct any "search and seizure" of any blood or fecal sample.

This issue of the right to privacy was addressed in *State of Oregon v. Amanda Newcomb*, Multnomah County Circuit Court, 110443303, A149495 (2014). The Texas Court of Appeals upheld the 8th Judicial District Court's denial of the Oregon Court of Appeal decision stating: "*The Oregon case has no prededential value or effecdt on Petitioner's convictions...*" Both the 8th Judicial District Court and the 6th District Court of Appeals failed to consider that the blood and fecal samples used against this Petitioner were NOT obtained in any lawful manner, and violated this Petioner's right to Privacy protected and guaranteed by the United States Constitution.

The Oregon case shows the very overt violation of Paselk's right to privacy. In *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex.1973), "This right to privacy is so important that the United States Supreme Court has repeatedly deemed it to stem implicitly from the Bill of Rights. Our State courts have long recognized a civil cause of action for the invasion of the right to privacy and have defined such an invasion in many ways: As an intentional intrusion upon the solitude or seclusion of another that is highly offensive to a reasonable person, *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Ft. Worth 1982, no writ); and as the right to be free from the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame or

humiliation to a person of ordinary sensibilities, *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Tex. 1976); *Billings v. Atkinson, supra, at 859*.

In *Griswold v. Connecticut*, 381 U.S. 479 (1965),, Justice Douglas articulated that although not explicit, the penumbras of the Bill of Rights contained a fundamental "right to privacy" that was protected by the 14th Amendment's Due Process Clause. Griswold's "right to privacy" has been applied to many other controversial decisions such as *Eisenstadt* and *Roe v. Wade*.

Paselk's right to privacy was invaded by private citizens who had no court authorized authority to invade the bodies of horses taken from her farm and collect any blood or fecal samples. Without court authorization, any blood and fecal samples collected by private citizens in these unwarranted searches and seizures are not admissible as evidence. "Under our law, evidence is illegally secured if it is obtained in violation of the Constitution or laws of the United States or the Constitution or laws of the State of Texas. Tex.Code Crim.Pree. Art. 38.23." *State v. Roberts. 940 SW 2d 655 - Tex: Court of Criminal Appeals 1996*.

Thus, Paselk's convictions, obtained by use of inadmissible evidence which was obtained thru the use of these unauthorized and unwarranted searches and seizures, conducted by unauthorized private citizens, are already null and void.

# CONCLUSION

The Appellate Court erred in not considering that the convictions against Petitioner Paselk are already null and void because:

1. The "**Judge**" of the Hopkins County Court At Law **is excluded by the Legislature** from presiding over allegations of cruelty to a livestock animal;

2. the Judge allowed inadmissible evidence obtained through unauthorized, warrantless search and seizure, conducted by private citizens who had no court authorized permission or authority, at trial to be used against this Petitioner, and in violation of her rights to lawful due process and protections of her rights to privacy.

The Court of Appeals also failed to consider that the judgments of conviction against this Petitioner were obtained using interpretation of state law which violate applicable decision of the Supreme Court of the United States. Finally, the Court of Appeals failed to consider important questions of state law that have not been, but should be, settled by this Court.

## <u>PRAYER</u>

This Petitioner prays that this honorable Court will grant her Petitioner For Writ of Habeas Corpus. This Petitioner prays that this honorable Court will find that the "**Judge**" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal. This Petitioner prays that this Court will finally settle the question of law whether the "Judge" of the Hopkins County Court At Law is excluded by the Legislature from presiding over allegations of cruelty to a livestock animal because this particular "**Judge**" "*gives preference to family law matters*." This Petitioner prays this Court will find that the judgments of conviction against this Petitioner were obtained using inadmissible evidence, and that this Petitioner did not receive the "effective assistance" of counsel at trial and in appeal guaranteed by the Constitution. Petitioner prays that this Court will find that the judgments of conviction against Petitioner Paselk are already null and void, and that they be overturned.

Respectfully Submitted,

Carol Paselk, Pro Se Petitioner
P.O. Box 1284
Emory, Texas 75440
(940) 435-3210

## CERTIFICATE OF COMPLIANCE

Pursuant to TRAP Rule 9.4(i)(3), in making this Certificate of Compliance, I am relying on the word count provided by the Libre Office 4.2.5.2 computer software used to prepare this document. In compliance with TRAP Rule 9.4(i)(2)(B), according to the Libre Office word-count function, this Amended Petition For Review, contains 6,108 words. In compliance with TRAP 9.4(e), the typeface used in this Brief is no smaller than 14-point, except for footnotes, which are no smaller than 12-point.

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing "Petition For Discretionary Review" has been mailed via United States Postal Service mail to William Ramsay, Appellate Counsel for the State of Texas, 110 Main Street, Sulphur Springs, TX 75482, on the _____ day of _____, 2015

Carol Paselk, Pro Se Appellant
P.O. Box 1284
Emory, Texas 75440

# APPENDIX A

## APPENDIX A - hay on hand



05/03/2009

On Sunday, May 3, 2009, there were over 80 bales of hay in the barn.



On Saturday, May 9, 2009, on the day of the seizure there were ten bales of hay in the barn. Another 80 bales were scheduled to be picked up on Sunday morning. This photo shows the "mess" that the rescuers left the barn in. They tore open hay bales and scattered hay all over the inside of the barn and all over the alleys between the stalls and pens, leaving a huge mess. They destroyed a huge, almost brand new, industrial size barn fan, and marked the walls of the barn with their marking "crayons". They broke the hinges off one of the gates, when there was NO reason to have done so. They left cigarette butts everywhere. They had NO respect for anything on the property. Melanie DeAeth testified that the horses in pasture were okay.



"Rescuers" left the barn a mess. They tore open hay bales and hay was strewn everywhere. Another 80 bales of hay was scheduled to be picked up the next morning - Sunday morning, May 10, 2009.



05/09/2009

On Saturday, May 9, 2009, at the time the "rescuers" stole the horses, there were fourteen 50lb. bags of 14% pellets in the feed room that had been purchased the night before – receipt of which was provided as evidence in court.   There was approximately 20 pounds of a twenty five pound bag of Cal Manna supplement.



05/09/2009

On Saturday, May 9, 2009, along with the 14 bags of pellets, there was a large stack of empty feed bags, clearly indicating that the horses were being fed, over a long period of time.

# APPENDIX B

## APPENDIX B

Fat Mares in pasture 1 month before the seizure.





# APPENDIX  C

REPORTER'S RECORD
VOLUME 3 OF 6 VOLUMES
TRIAL COURT CAUSE NO(S) CR0926723, CR0926724

| STATE OF TEXAS | ) | IN THE COUNTY COURT |
| Plaintiff, | ) | |
| VS. | ) | AT LAW |
| CAROL PASELK | ) | |
| Defendant. | ) | HOPKINS COUNTY, TEXAS |

*****************************

TRIAL ON MERITS

*****************************

COPY

On the 27th day of October, 2009, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Amy M. Smith, Judge presiding, held in Sulphur Springs, Hopkins County, Texas: Proceedings reported by machine shorthand method.

# APPENDIX c

some of the horses were in stalls?

A.   Right.  That's true.  There were horses -- the horses that were inside and in the manure also had no ventilation, no daylight, but there was a pasture out back that had some horses in it.

Q.   And overall there would be a few horses that if you just took a snapshot of those two or three --

A.   Right.

Q.   -- they would be --

A.   Right.

Q.   -- I guess considered okay?

A.   Yes, right.  There were some that were okay.  There was one pasture that probably had enough grass and was maintaining those horses.

Q.   But as a whole, what would your opinion be?

A.   But the majority of it was gross neglect, gross abuse.  You know, those animals were suffering. They didn't see daylight.  They didn't have pens big enough to walk.  Their hooves were out and under, so they never touched the ground, you know, starving, horses in pain, the one that had laid there and died all night, you know, suffered and died, you know, just gross neglect and abuse.

Q.   And if you are looking at this case as to what is best for the horses, what, if anything, would

week's time.

A. Well, at that particular time when Sergeant Crump went out there, he didn't know of any history of Ms. Paselk. He kind of felt sorry for her, and from what she was telling him, he was going to give her time to -- he saw feed. He saw wormer. He didn't know anything about the rescue group's prior dealings with her, and she just wasn't doing anything. I mean, the day we went out to serve the seizure papers, the feed was still there, and the wormer was still there in the bucket, and she hadn't even attempted to do anything. So after Lieutenant Turner and I had discussed it, we just kind of took it upon our own to go see Ms. Rabe and get the seizure papers because the horses would be starved to death.

Q. And on the flip side of that, if what she had told Mr. Crump compared to what we knew of the rescue groups and their involvement had been true, if they were still going to work with her, if there was going to continue to be a supply of food or wormer, if what she had told Mr. Crump he wrongly or rightly believed, if that were true, would you have a different opinion?

A. I would have. She would probably still have the horses today because she was attempting to feed

KAYLA R. SCOTT, CSR, RPR     (214) 534-9424

The Court needs to consider that the "rescues"testified that they were NOT supplying continuing support which they could withdraw from Appellant. Appellant had been purchasing feed on her own for months without the support of any "rescue."

been an equine judge at Texas A&M?

A.    I was in 4H prior to college.  I was on a horse judging team, and then I started in Commerce on the collegiate horse judging team.

Q.    Horse judging team?

A.    Correct.

Q.    So at least in your somewhat younger days you were around horses quite a bit --

A.    Correct.

Q.    -- judging things?

A.    Correct.

Q.    So you know -- you really do know what an older horse tends to look like and a younger horse tends to look like; isn't that right?

A.    There's a lot of things in my opinion that you look for, and sometimes it's hard to tell a difference between an older horse and a poorer horse just from looking at them without inspecting their teeth and dental work and that kind of stuff.

Q.    You relied on the secondhand statements through Henry Turner, through Lieutenant Turner of these horse rescue people that she was going to get cut off from her assistance or was receiving sporadic assistance; that's what you relied on in changing your opinion and swearing under oath, well, actually I

Q.    Do you know how many times it happened?

A.    Once from what I understand.  All the more reason to move them into another home I would think.

Q.    How much assistance did you offer my client?

A.    I think I got the board to approve purchasing $200 worth of hay, and then we approved purchasing 25 wormers.

Q.    And --

A.    We don't feed other people's horses.  That was really a unique case.

MR. LILLEY:  I am going to show you in a moment here what I am going to mark as Defendant's Exhibits 3, 4, and 5.  Strike that.  I am going to -- one of them is a duplicate, so I am going to go with Defendant's Exhibits 3 and 4.

MS. RABE:  Your Honor, my only objection would be as to whether or not she is the one who took these photographs and she is aware of the circumstances behind it.

MR. LILLEY:  Your Honor, I guess she could testify to that, whether or not she is aware of it, but I am not trying to admit it for that purpose.  Without going into what the details are, I would like to show it to --

THE COURT:  Show it to the witness.

believe they should be seized; is that correct?

A. Correct.

Q. Do you ever sense -- do you know what these people's names are?

A. Which people?

Q. These rescue organization folks. Do you know what their names are?

A. No, sir.

Q. Do you know if they are male or female or if they live in Texas? Do you know for sure whether or not they have even talked to Carol Paselk?

A. No, sir.

Q. The mention of the ten-day offer that you made Ms. Paselk, that's not in your narrative report, is it?

A. I don't believe so.

Q. So that was an offer that was made, but it wasn't made -- it wasn't indicated in your report?

A. Correct.

Q. And you never told her -- and if you did, please let us know -- that if she didn't get rid of some horses in ten days that she was facing imminent law enforcement seizure, did you?

A. No, sir.

MR. LILLEY: Pass the witness.

Q.    -- when he went out?

A.    No.

Q.    Did you then send another deputy out at some point?

A.    Yes, I did.

Q.    And who was that deputy?

A.    That was Sergeant Tanner Crump.

Q.    What were you instructing Tanner Crump to do once he went out to the property?

A.    To investigate the conditions of the horses.

Q.    In light of the information you were receiving from the rescue organization?

A.    That's correct.

Q.    What were the concerns the rescue organizations had that you felt like you were trying to look into?

A.    They weren't getting properly fed.

MR. LILLEY:  Objection, hearsay as to anything these horse rescue organizations told Lieutenant Turner.

MS. RABE:  The truth of the matter is it's the nature of the investigation he would be conducting to see what they were looking into.

THE COURT:  His reasons --

MR. LILLEY:  With an instruction that

from the rescue organizations or did you ever get any information as to whether or not that continued to be a source of medicine, feed, hay?

A. Yes. And I actually, I believe, had conversation with two people from different organizations.

Q. In your opinion, were those resources about dried up and were they at the point they weren't going to work with Ms. Paselk anymore?

A. Absolutely.

Q. Did that factor into a decision to go in and seize the horses?

A. Yes. And the other factor was that I had made notification to the county attorney's office and let them know what was going on at that time, and we even had made an offer to help her with the horses as long as we were able to find a home for those horses.

Q. We even discussed -- again, one last time we would like to see something other than a seizure happen and to let her have control of what happened to her horses that she loved?

A. Yes.

Q. And what was the plan that you and I came up with as a last-ditch effort?

A. That we would provide hay and food for the

horses.

Q.    And we are not going -- it wasn't like you and I are going to provide the hay and food, but the sheriff's office?

A.    Right.

Q.    And that we would --

A.    And that we would provide that for a week, and during that week, she needed to be finding a place for -- a home for those horses.

Q.    And what was her response to that offer?

A.    She said no.

Q.    And at that point was there a strong concern about the likelihood of these horses making it at that point?

A.    Very strong concern.

MS. RABE:  I will pass the witness.

CROSS-EXAMINATION

BY MR. LILLEY

Q.    Lieutenant Turner, you sent out Sergeant Crump and Officer David Ray; isn't that correct?

A.    Yes.

Q.    Out to the property?

A.    Yes.

Q.    In fact, you had never been out there before that time?

A.  No.

Q.  And you weren't out there after that time until the day of the seizure; is that correct?

A.  That's correct.

Q.  And there's a six-day window in between those two, between the time that Sergeant Crump was there and the time that the seizure warrant was issued; isn't that correct?

A.  I believe so.

Q.  Did you personally make this offer of hay and feed to Ms. Paselk?

A.  Personally?

Q.  Yes.

A.  No.

Q.  Were you there when anybody else personally made the offer?

A.  No.

Q.  Do you know what the wording was behind -- what the contingencies were on this offer, and were you there when she said no, how she said no, or whether or not it was a qualified no or an absolute no?  You weren't there for any of that?

A.  I wouldn't know if it was a qualified no or absolutely no.

Q.  Because you weren't there for that?

A. I wasn't there for that. I got that information from the officer that was out there on the scene.

Q. Now, you signed the -- you signed the complaint in this case, in the criminal case; isn't that correct? You signed the complaint which resulted in her arrest; isn't that correct?

A. I believe so.

Q. I mean, if there's documentation to that effect, then that's probably true, right?

A. Absolutely.

Q. And part of what you state is that you read reports by the sheriff's department in coming up with your decision to make an arrest; isn't that right?

A. Yes.

Q. All right. Because you don't have the personal knowledge of what was going on on that property other than what happened at the seizure, so you have to rely at least in part on what Sergeant Crump said?

A. Absolutely.

Q. Have you read Sergeant Crump's report?

A. It's been a while since I read that.

Q. But you believe you have seen a narrative report?

A.    I believe so.

Q.    Do you recall that on April 30th or May 1st, the following day, that Sergeant Crump said there was no immediate need to seize the horses at this time because there was feed and medical care available?  Do you recall that?

A.    That's what was told to him.

Q.    Okay.  Are you aware that was put in his report as fact?

A.    I believe so.

Q.    Okay.  You aren't disputing that?

A.    Not unless I can read the report actually.

Q.    Now, you said that you spoke with some members of a rescue organization.  Did you speak to them before or after or both, before the contact with Sergeant Crump and after or both?

A.    Yeah, I think it would have probably been a little bit of both.  It was continuous.

Q.    Do you recall their names?

A.    I believe one was I want to say Melanie.

Q.    Melanie?

A.    Melanie.

Q.    Anybody else that you recall names of?

A.    And I believe the other one may have been Jennifer.

Q.   Now, did you speak to them by phone or by e-mail or --

A.   Phone.  I talked to both of them by phone.

Q.   And do you know where these people live?

A.   No.

Q.   Have you ever met them in person?

A.   No.

Q.   Have you ever sat them down in your office and interviewed them?

A.   No.

Q.   Have you ever been able to see them to gauge their truthfulness or untruthfulness in person?

A.   No, not in person.

Q.   And so these folks that you spoke with who said that they were -- they had been helping Ms. Paselk -- is that what they told you?

A.   Yes.

Q.   And they weren't going to help her anymore?

A.   Yes.

Q.   That could have been anybody; isn't that true, Lieutenant Turner?  I mean, you don't know who these people are because you have never met them before; isn't that correct?

A.   I had never met them before, no.

Q.   So you can't really give an opinion on a

personal level as to their credibility?

A.   No, not at that time.

Q.   Now, of course, Sergeant Crump was able to meet with my client in person and talk with her for a couple of hours in person, and he based his report upon that; isn't that correct?

A.   I believe so.

Q.   And according to what he believed at the time, he believed that there was no need to seize these horses; isn't that correct?

A.   I believe so.

Q.   And you took it upon yourself to change his mind about that; isn't that correct?

A.   I took it upon myself as a supervisor to look at that report and look at the pictures that I have seen to make a decision.

Q.   Those were pictures that Sergeant Crump took of things that he saw in person, and saw pictures of it?

A.   That's correct.

Q.   Things that he looked at and determined weren't necessary for a seizure, you had a different idea?

A.   Yes.

Q.   And you never followed up with an

witness.

RECROSS-EXAMINATION

BY MR. LILLEY

Q.    Are you aware of any writing that offered this ten days' worth of feed if she would agree to find another home for some of her horses?

A.    I am not aware of any writing.

Q.    You are not aware of anything put down in writing?

A.    No.

Q.    So as far as you understand, that was an oral offer --

A.    Yes.

Q.    -- that from what you understand she didn't want to do?

A.    That's correct.

Q.    And you are not aware of anybody -- are you aware of anybody telling my client that if she did not agree to re-home the horses that they would be seized by law enforcement?  Are you aware of anybody actually explaining that to her?

A.    No.

MR. LILLEY:  Pass the witness.

FURTHER REDIRECT EXAMINATION

BY MS. RABE

Q.    Did you read Sergeant Crump's report --

A.    Yes.

Q.    -- based on his April 30th visit?

A.    Yes.

Q.    You are aware it says that no immediate seizure is needed?

A.    I do.  I am.

Q.    You are aware that he toured the property personally with Deputy Ray?

A.    Right.

Q.    And Deputy Ray didn't file any contrary report where he says, I don't care what Tanner Crump says; what I saw they need to be seized?  He didn't file anything like that either?

A.    Right.

Q.    So they were looking at the same place you were looking at?

A.    Yes.

Q.    And their conclusion on April 30th there was no seizure needed?

A.    Right.

                MR. LILLEY:  Pass the witness.

                FURTHER REDIRECT EXAMINATION

BY MS. RABE

Q.    So explain to the jury what changed within a

# APPENDIX  D

# APPENDIX D



# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00099-CR

EX PARTE: CAROL PASELK

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 00665

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

Carol Paselk's appeal of the denial of her petitions for habeas corpus relief has it origins in two previous convictions in the County Court at Law of Hopkins County for cruelty to livestock animals.[1] In 2010, we upheld both convictions. *Paselk v. State*, No. 06-09-00214-CR, 2010 WL 3034258, at *1 (Tex. App.—Texarkana Aug. 5, 2010, pet. ref'd) (mem. op., not designated for publication); *Paselk v. State*, No. 06-09-00215-CR, 2010 WL 3034255, at *1 (Tex. App.—Texarkana Aug. 5, 2010, pet. ref'd) (mem. op., not designated for publication). Paselk filed on April 21, 2014, petitions for writs of habeas corpus in the 8th Judicial District Court of Hopkins County arguing, among other things, that the two convictions were void and maintaining that the County Court at Law lacked subject-matter jurisdiction.

Article 11.072 of the Texas Code of Criminal Procedure "establishes the procedures for an application for a writ of habeas corpus in a felony or misdemeanor case in which the applicant seeks relief from an order or a judgment of conviction ordering community supervision."[2] TEX. CODE CRIM. PROC. ANN. art. 11.072, § 1 (West Supp. 2014); *Villanueva*, 252 S.W.3d at 395–96. Article 11.09 of the Texas Code of Criminal Procedure establishes the procedure for seeking a

---

[1] *See* TEX. PENAL CODE ANN. § 42.09 (West 2011).

[2] Paselk has completed both her sentence and her community supervision term. "The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty." TEX. CODE CRIM. PROC. ANN. art. 11.01 (West Supp. 2014). "It is an order issued by a court or judge of competent jurisdiction, directed to any one having a person in his custody, or under his restraint, commanding him to produce such person, at a time and place named in the writ, and show why he is held in custody or under restraint." *Id.* "The terms 'confinement' and 'restraint,' for habeas corpus purposes, have been defined broadly" to "include a wide variety of detrimental consequences." *Ex parte Ali*, 368 S.W.3d 827, 831, 832 (Tex. App.—Austin 2012, pet. ref'd); *see Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010); *Le v. State*, 300 S.W.3d 324, 326–27 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding); *State v. Collazo*, 264 S.W.3d 121, 126–27 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Thus, "the completion of an applicant's sentence or probationary term does not deprive the trial court of jurisdiction." *Ali*, 368 S.W.3d at 831; *see Ex parte Villanueva*, 252 S.W.3d 391, 395–96 (Tex. Crim. App. 2008) (Section 11.072 expressly "permits a person who is serving or who has completed a term of community supervision to file an application for a writ of habeas corpus."); *Ex parte Schmidt*, 109 S.W.3d 480, 481 (Tex. Crim. App. 2003).

2

writ of habeas corpus in misdemeanor cases not involving community supervision. TEX. CODE CRIM. PROC. ANN. art. 11.09 (West 2005). In one case, Paselk was placed on community supervision; in the other case, she was sentenced to 275 days' confinement in the Hopkins County Jail. *Paselk*, 2010 WL 3034258, at \*1; *Paselk*, 2010 WL 3034255, at \*1. Accordingly, Paselk's petitions for writs of habeas corpus were filed under Articles 11.072 and 11.09 respectively, of the Texas Code of Criminal Procedure. We affirm the district court's judgment with respect to Paselk's Article 11.072 petition, but find that we are without jurisdiction over Paselk's appeal from the denial of her Article 11.09 petition.

An applicant seeking relief via the writ of habeas corpus bears the burden to prove his claim by a preponderance of the evidence. *Ex parte Morrow*, 952 S.W.2d 530, 534 (Tex. Crim. App. 1997); *In re Davis*, 372 S.W.3d 253, 256 (Tex. App.—Texarkana 2012, orig. proceeding). In reviewing a trial court's ruling on a post-conviction application for the writ, we view the evidence in the light most favorable to the habeas court's ruling, and we uphold that ruling absent an abuse of discretion. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003) (per curiam), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007); *see Ex parte Simpson*, 260 S.W.3d 172, 174 (Tex. App.—Texarkana 2008, pet. ref'd). We afford almost total deference to the habeas court's findings of historical fact, so long as the findings are supported by the record. *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004). Similarly, we will defer to the habeas court's application of the law to the facts, but only when resolution of the ultimate question turns on an evaluation of credibility and demeanor. *Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010); *White*, 160 S.W.3d at 50.

3

When resolution of the ultimate question turns solely on an application of legal standards, our review is de novo. *Peterson*, 117 S.W.3d at 819.

"An application under Article 11.072 'must be filed with the district clerk of the court in which community supervision was imposed'" and must "attack the 'legal validity' of '(1) the conviction for which or order in which community supervision was imposed'; or '(2) the conditions of community supervision.'" *Villanueva*, 252 S.W.3d at 395 (quoting TEX. CODE CRIM. PROC. ANN. art. 11.072, § 2). Paselk's burden to show that she is entitled to habeas relief includes providing an adequate record demonstrating compliance with Article 11.072. *See* TEX. R. APP. P. 52.7(a) (requiring certified copies of all relevant documents filed in any underlying proceeding and a properly authenticated transcript of any relevant testimony from any underlying proceeding); *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). Paselk's Article 11.072 petition for habeas relief was filed with the district court. Here, while Paselk attacked the legal validity of her convictions, nothing beyond a bare assertion in the petition demonstrates that the Article 11.072 petition for writ of habeas corpus was first filed in the County Court at Law of Hopkins County—the court in which community supervision was imposed.[3] Thus, we cannot say that the district court abused its discretion in concluding that the Article 11.072 petition was improperly filed.[4]

---

[3] Paselk's petition stated, "Petitioner filed Petition For Writ of Habeas Corpus with the County Court At Law on July 28, 2011. Judge Amy Smith denied Petition by letter. Petitioner filed a second Petition For Writ of Habeas Corpus with Judge Amy Smith, with new information, on December 12, 2013. Judge Amy Smith denied Petition by letter."

[4] Paselk provided the district court with a "Supplement of Brand New Court of Appeals Case Law" not originally included in her petition for writ of habeas corpus. The supplement and Paselk's brief on appeal rely heavily on a ruling of the Oregon Court of Appeals in a case she cites as "*State of Oregon v. Amanda L. Newton* Multnomah County Circuit Court 110443303, A149495" and appears to complain that the trial court refused to recognize it as authority. We located the case to which Paselk referred and note that the Oregon Supreme Court has agreed to

4

We recognize that in its order denying Paselk's Article 11.072 petition, the trial court wrote, "According to Petitioner . . . , she has already sought habeas relief from the proper court. It was denied." Even assuming that Paselk had filed the Article 11.072 petition with the County Court at Law of Hopkins County, our result would be the same. Article 11.072, Section 9 "restricts the circumstances under which a court can consider the merits of claims raised in a subsequent application." *Villenueva*, 252 S.W.3d at 396. Section 9 states,

(a)     If a subsequent application for a writ of habeas corpus is filed after final disposition of an initial application under this article, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application filed under this article because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

(b)     For purposes of Subsection (a), a legal basis of a claim is unavailable on or before a date described by that subsection if the legal basis was not recognized by and could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state on or before that date.

(c)     For purposes of Subsection (a), a factual basis of a claim is unavailable on or before a date described by that subsection if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date.

TEX. CODE CRIM. PROC. ANN. art. 11.072, § 9. Because our record does not contain any petition for writ of habeas corpus filed with the County Court at Law of Hopkins County, we are unable to ascertain whether Paselk's petition with the district court met the requirements of Section 9. Clearly, if Paselk's Article 11.072 petition was identical to the one submitted to the County

---

review that case on appeal from the Court of Appeals. *See Oregon v. Newcomb*, 324 P.3d 557 (Or. App. 2014). Even if the case she cited were the final rule of law as it applies in Oregon, the district court here was correct in stating, in an order denying an "apparent request for reconsideration of" its ruling, that an Oregon case has no precedential value in the determinations applying to this case.

5

Court at Law of Hopkins County, the district court would be restricted from considering the petition on its merits.

Our treatment with respect to Paselk's Article 11.09 petition is different. Unlike Article 11.072, which mandates that a habeas petition "*must* be filed with . . . the court in which community supervision was imposed," TEX. CODE CRIM. PROC. ANN. art. 11.072, § 2 (emphasis added), Article 11.09 merely states that a person "*may* apply to the county judge of the county in which the misdemeanor is charged to have been committed," TEX. CODE CRIM. PROC. ANN. art. 11.09 (emphasis added). In contrast to Article 11.072, the language of Article 11.09 "is permissive, not mandatory, and is therefore merely advisory in nature." *State ex rel. Rodriguez v. Onion*, 741 S.W.2d 433, 434 (Tex. Crim. App. 1987) (orig. proceeding); *see Ex parte Tarango*, 116 S.W.3d 201, 202 n.3 (Tex. App.—El Paso 2003, no pet.); *In re Maxwell*, 970 S.W.2d 70, 71 n.1 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding). Under Article 11.05 of the Texas Code of Criminal Procedure, "[t]he Court of Criminal Appeals, the District Courts, the County Courts, or any Judge of said Courts, have power to issue the writ of habeas corpus." TEX. CODE CRIM. PROC. ANN. art. 11.05 (West 2005). As a result, Article 11.09 does not deprive district courts of jurisdiction to hear post-conviction habeas corpus petitions in misdemeanor cases.[5] *Onion*, 741 S.W.2d at 434. Thus, both county and district courts have original jurisdiction in habeas corpus proceedings when attacks are made upon the validity of

---

[5] The district court's order states that Paselk could have appealed the county court's denial of her Article 11.09 petition, assuming that such a petition had been filed there. When the court in which an Article 11.09 application was filed denies the writ, the applicant can also present his application to another court having jurisdiction. *See Mayes v. State*, 538 S.W.2d 637, 639 (Tex. Crim. App. 1976); *Cree v. State*, 814 S.W.2d 74, 76 (Tex. App.—Corpus Christi 1991), *pet. ref'd*, 817 S.W.2d 344 (Tex. Crim. App. 1991).

misdemeanor convictions not involving community supervision. *Id.*; *Tarango*, 116 S.W.3d at 202 n.3; *Maxwell*, 970 S.W.2d at 71 n.1.[6]

However, "[a] trial court's ruling [in a habeas corpus proceeding] is appealable only when the trial court issues the writ and then rules on the merits of the questions presented at the hearing and denies the relief sought." *In re Shaw*, 175 S.W.3d 901, 904 (Tex. App.—Texarkana 2005, orig. proceeding). But, "when a trial judge refuses to issue a writ or denies an applicant a hearing on the merits of his or her claims, there is no right to appeal." *Villanueva*, 252 S.W.3d at 394.

Paselk argues that the district court erred in failing to consider the merits of her numerous claims and in denying habeas relief "without any hearing or consideration of the pertinent facts."[7] Here, the district court (1) did not grant Paselk's petition for writ of habeas corpus, (2) did not hold a hearing or purport to rule on the merits of Paselk's claims, (3) did not rule on the merits of Paselk's claims, except to determine that the county court had jurisdiction over Paselk's convictions, and (4) denied habeas relief. Thus, here, "[t]here is no appeal from a refusal to issue the writ of habeas corpus" under Article 11.09. *Ex parte McCullough*, 966 S.W.2d 529, 531 (Tex. Crim. App. 1998) (per curiam); *see Ex parte Hargett*, 819 S.W.2d 866,

---

[6]*See also Ex parte Davis*, No. 12-09-00172-CR, 2010 WL 827322, at *1 (Tex. App.—Tyler Mar. 10, 2010, pet. ref'd) (mem. op., not designated for publication). Although this unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[7]Although Paselk raised several complaints in her habeas petition, the trial court only addressed the issue of the county court's jurisdiction over Paselk's convictions. "[C]ounty courts shall have original jurisdiction of all misdemeanors of which exclusive original jurisdiction is not given to the justice court, and when the fine to be imposed shall exceed five hundred dollars." TEX. CODE CRIM. PROC. ANN. art. 4.07 (West 2005). Under Section 42.09 of the Texas Penal Code, Paselk was charged with a class A misdemeanor. *See* TEX. PENAL CODE ANN. § 42.09(c). Class A misdemeanors are punishable by a fine not to exceed $4,000.00, confinement in jail for a term not to exceed one year, or both such fine and confinement. TEX. PENAL CODE ANN. § 12.21 (West 2011). Thus, the district court correctly ruled that the County Court at Law of Hopkins County had jurisdiction over the State's indictments against Paselk.

868–69 (Tex. Crim. App. 1991), *superseded in part by statute as discussed in Villanueva*, 252 S.W.3d at 397 (because writ issues automatically in Article 11.072 cases, *Hargett* rule does not apply); *Shaw*, 175 S.W.3d at 903–04 (citing *Ex parte Martell*, 901 S.W.2d 754, 755 (Tex. App.—San Antonio 1995, no pet.) (per curiam); *Cree*, 814 S.W.2d at 76.[8]

We affirm the trial court's ruling with respect to her Article 11.072 petition for writ of habeas corpus, but dismiss the portion of Paselk's appeal related to her Article 11.09 petition for writ of habeas corpus for want of jurisdiction.

Bailey C. Moseley
Justice

Date Submitted:     August 21, 2014
Date Decided:       October 1, 2014

Do Not Publish

---

[8] "In a case where a judge refuses to issue the requested writ of habeas corpus or denies an applicant the requested hearing on the merits of his claim, an applicant's remedies are limited." *Hargett*, 819 S.W.2d at 868; *see Villanueva*, 252 S.W.3d at 394. "Some remedies available to an applicant in that situation are to present the application to another district judge having jurisdiction, or under proper circumstances, to pursue a writ of mandamus." *Hargett*, 819 S.W.2d at 868 (citations omitted); *see Villanueva*, 252 S.W.3d at 394.

FILED IN
Court of Appeals
OCT 01 2014

Texarkana, Texas
Debra Autrey, Clerk

8



# Court of Appeals
## Sixth Appellate District of Texas

# JUDGMENT

Ex Parte: Carol Paselk

No. 06-14-00099-CR

Appeal from the 8th District Court of Hopkins County, Texas (Tr. Ct. No. 00665). Memorandum Opinion delivered by Justice Moseley, Chief Justice Morriss and Justice Carter participating.

As stated in the Court's opinion of this date, we find no error in the judgment of the court below. We affirm the trial court's ruling with respect to Carol Paselk's Article 11.072 petition for writ of habeas corpus, but dismiss for want of jurisdiction the portion of her appeal related to her Article 11.09 petition for writ of habeas corpus.

We note that the appellant has adequately indicated her inability to pay costs of appeal. Therefore, we waive payment of costs.

RENDERED OCTOBER 1, 2014
BY ORDER OF THE COURT
JOSH R. MORRISS, III
CHIEF JUSTICE

ATTEST:
Debra K. Autrev. Clerk